UNITED SERVICES AUTOMOBILE
ASSOCIATION, et al., Plaintiffs,

v.

Constance FOSTER, Insurance Com-
missioner of the Commonwealth
of Pennsylvania, Defendant,

and

Pennsylvania Association of Indepen-
dent Insurance Agents, et al., In-
tervenors–Defendants.

No. CV–84–1596.

United States District Court,
M.D. Pennsylvania.

Jan. 14, 1992.

Michael L. Browne, Christopher K. Walters, Reed, Smith, Shaw & McClay, Philadelphia, Pa., Glen D. Nager, Robert H. Klonoff, Jones, Day, Reavis & Pogue, Washington, D.C., for plaintiffs.

John G. Knorr, III, Chief Deputy Atty. Gen., Chief, Litigation Section, Office of Atty. Gen., Harrisburg, Pa., for defendant.

William R. Balaban, Balaban and Balaban, Harrisburg, Pa., Jonathan B. Sallet, Ann M. Kappler, Jenner & Block, Washington, D.C., for intervenors-defendants.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

Plaintiffs United Services Automobile Association ("USAA"); USAA Casualty Insurance Company ("USAA Casualty"); USAA Life Insurance Company ("USAA Life"); and USAA Annuity and Life Insurance Company ("USAA Annuity") filed this declaratory judgment action in 1984 challenging the constitutionality of section 641 of the Pennsylvania Insurance Code. Section 641 is an "anti-affiliation statute" which prohibits lending or banking institutions from being licensed or admitted as insurers in Pennsylvania.[1] USAA is a Texas-based reciprocal inter-insurance exchange. Three of its wholly-owned subsidiaries, USAA Casualty, USAA Life and USAA Annuity, are licensed to sell insurance in Pennsylvania.[2] A fourth wholly-owned subsidiary, USAA Financial Services Company ("USAA Financial"), is a savings and loan holding company. USAA Financial owns a bank in San Antonio, Texas, the USAA Federal Savings Bank (the "Bank"), which it began operating in 1983.[3]

Shortly after USAA Financial began operating the Bank, the Pennsylvania Insurance Department (the "Department") notified USAA that its simultaneous ownership of the Bank and of subsidiaries selling insurance in Pennsylvania was a violation of the anti-affiliation statute. The department gave USAA two options: (1) cease selling insurance in Pennsylvania or (2) divest itself of the Bank.

The ultimatum prompted USAA and its three insurance subsidiaries to file this declaratory judgment against Constance Foster, the Insurance Commissioner of Pennsylvania (the "Commissioner"), challenging the statute's constitutionality and seeking an injunction prohibiting its enforcement against USAA. Shortly thereafter, the department issued an order to show cause directing USAA, and its insurance subsidiaries, to appear at a license revocation hearing. *In re USAA, et al.,* Docket No. C84-12-5 (Pa.Ins.Comm'r). Both matters have been in litigation ever since, although the state administrative proceeding was stayed shortly not long after its inception pending further developments in the federal action. The Pennsylvania Association of Independent Insurance Agents (the "Association") sought, and was granted, leave to intervene in both actions.[4]

---

1. Section 641 provides, in relevant part:

   (b) No lending institution, public utility, bank holding company, savings and loan holding company or any subsidiary or affiliate of the foregoing, or officer or employee thereof, may, directly or indirectly, be licensed or admitted as an insurer or be licensed to sell insurance in this State either as a broker or an agent except that a lending institution or bank holding company, subsidiary or affiliate of a lending institution may be licensed to sell credit life, health and accident insurance and to sell and underwrite title insurance in accordance with regulations promulgated by the Insurance Commissioner.

40 P.S. § 281.

2. USAA is licensed to transact insurance business in all fifty states.

3. The Bank is located exclusively in San Antonio, Texas and does not sell insurance, accept deposits from, or make loans to Pennsylvania residents.

4. Leave to intervene in the federal action was initially denied but granted two years later on a second petition. Leave was granted under Fed. R.Civ.P. 24(b)(2), which provides in relevant part:

   Upon timely application anyone may be permitted to intervene in an action.... (2)

After nearly seven years of litigation and two appeals to the United States Court of Appeals for the Third Circuit,[5] USAA and the Commissioner reached a settlement agreement disposing of both actions in April, 1991. Under the terms of the agreement, USAA Financial may continue operating the Bank, provided it does not seek out or initiate banking transactions with Pennsylvania residents, with the exception of credit card transactions, which are permitted.[6] So long as USAA Financial conforms to these conditions, the Commissioner agrees not to initiate license forfeiture proceedings against USAA or its three insurance subsidiaries transacting business in Pennsylvania. Despite the Association's opposition, USAA executed the agreement, and it was submitted to the Commissioner for formal approval. Approval was granted, and the matter is now in litigation before the Commonwealth Court of Pennsylvania. 42 Pa.C.S.A. § 763.

The Association seeks to block implementation of the settlement. Until last April, the Association's role in the federal action was essentially a passive one. It did not file a responsive pleading or take other action to move the case forward. It was not included in the settlement negotiations between USAA and the Commissioner. After receiving notice that the two had settled, the Association assumed a more active role.

Following negotiation of the settlement agreement, the Association interposed a counterclaim in the federal court action, followed quickly by a motion for summary judgment. Up until that time, it had not filed a responsive pleading. In its counterclaim, the Association alleges that the Commissioner's willingness to allow USAA to continue transacting insurance business in Pennsylvania is a clear violation of section 641, and it seeks an injunction permanently barring USAA from "soliciting marketing, offering or selling insurance pursuant to their insurance licenses so long as they are affiliated with a savings and loan holding company or any other financial or lending institution."

USAA, its insurance subsidiaries and the Commissioner oppose the counterclaim and challenge the Association's right to file it at this extremely late date. Before the court are five motions: (1) a motion (Record Document No. 148, filed May 6, 1991) by the Association for summary judgment; (2) a motion (Record Document No. 152, filed May 23, 1991) by plaintiffs to dismiss or strike the Intervenors' counterclaim; (3) a motion (Record Document No. 160, filed June 28, 1991) by the Association for leave to file an amended answer or a supplemental pleading; (4) a conditional motion (Record Document No. 162, filed July 8, 1991) by plaintiffs to dismiss; and (5) a motion (Record Document No. 168, filed July 22, 1991) by the Commissioner for leave to file a brief in support of plaintiffs' motion to dismiss the counterclaim.

We will grant plaintiff's motion to strike the counterclaim and deny the Association's motion for leave to file an amended answer or a supplemental pleading. We will, therefore, grant plaintiffs' conditional motion to dismiss the complaint, without prejudice. The remaining motions will be denied as moot.

when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

5. *USAA v. Foster,* 680 F.Supp. 712 (M.D.Pa. 1987), *rev'd sub nom., Ford Motor Co. v. Insurance Commissioner,* 874 F.2d 926 (3d Cir.), *cert. denied,* 493 U.S. 969, 110 S.Ct. 418, 107 L.Ed.2d 382 (1989) and *USAA v. Muir,* No. 84–1596 (M.D.Pa. Sept. 30, 1985), *rev'd,* 792 F.2d 356 (3d Cir.1986), *cert. denied,* 479 U.S. 1031, 107 S.Ct. 875, 93 L.Ed.2d 830 (1987).

In its most recent decision, the Court of Appeals for the Third Circuit remanded the case to the district court to determine the applicability of section 641. Contrary to the Association's assertion, we do not read the Third Circuit's opinion as *requiring* this court to resolve issues which the parties have settled. See generally: *Ford, supra,* 874 F.2d at 934–35 n. 11 and 945.

6. The Bank is permitted to continue its participation in banking transactions and business initiated with Pennsylvania residents before they moved into the Commonwealth.

## DISCUSSION

### Motion to dismiss the counterclaim

■ Plaintiffs seek dismissal of the counterclaim on three grounds: (1) failure to seek leave of court as required by Fed. R.Civ.P. 13(f) or 15(a); (2) undue prejudice to USAA, its subsidiaries and the Commissioner if such leave is granted; and (3) failure to state a cause of action. The failure to seek leave of court is a procedural deficiency which alone would not constitute grounds for dismissal. Moreover, the Association retroactively remedied the deficiency by filing for leave to intervene. (Record Document No. 160, filed June 28, 1991.) We will consider the motion for leave to amend filed *nunc pro tunc*.

■ Plaintiffs' claims of undue prejudice and failure to state a claim are not so easily repudiated. Grant or denial of a motion for leave to amend or file a supplemental pleading is subject to the sound discretion of the court. Factors to be considered include: whether the claim is timely; whether allowing it will prejudice opposing parties; whether the claim is compulsory; whether the pleader has acted in good faith; and whether it raises a meritorious claim. *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir.1984), *cert. denied*, 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985) and *Perfect Plastics Industries v. Cars & Concepts*, 758 F.Supp. 1080, 1081 (W.D.Pa.1991). The rules governing amendment and supplemental pleadings [7] are generally liberally construed in favor of permitting such pleadings, consistent with the goal of ensuring that all related claims are litigated in a single action. See generally: *Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 229–30, 9 L.Ed.2d 222 (1962).

■ The Association's counterclaim is, without question, untimely.[8] It was filed two years after leave to intervene was granted, and the Association has offered no plausible explanation for the delay. The Association argues disingenuously that the counterclaim did not arise until the original parties settled, and that it was "interposed at the earliest possible time." The Association's focus on the execution of the agreement as a triggering event is a red herring. The thrust of its counterclaim is that USAA should not be permitted to transact insurance business in Pennsylvania so long as USAA Financial operates the Bank, and that allowing it to continue doing so is a violation of section 641. That claim did not originate upon execution of the agreement, but has been the focus of this case since its inception eight years ago. It is misleading, to say the least, for the Association to now argue that it did not have knowledge of the facts necessary to assert the counterclaim when it intervened. Nothing prevented the Association from asserting the counterclaim at that time, and that is the procedure that should have been followed.

Moreover, the delay works to the substantial prejudice of USAA and the Commissioner, who spent months and months negotiating a settlement to this matter which has been in litigation for the past

---

**7.** Rule 13(f) governs the addition of counterclaims; it provides:

> When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of the court set up the counterclaim by amendment.

Rule 15(a) governs the amendment of pleadings generally; it provides:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or if the pleading is one to which no responsive pleading is permitted and the action has not been placed on the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

**8.** Although plaintiff filed an amended complaint not long before the counterclaim was filed, the sole purpose of the amendment was to delete a reference to diversity jurisdiction which plaintiffs have since found does not apply. (See: Record Document No. 131, filed January 3, 1991 and Record Document No. 141, filed April 5, 1991).

The Association does not contend the answer which contains its counterclaim (Record Document No. 147, filed May 6, 1991) was properly filed in response to the amended complaint.

eight years and has undergone two appeals.[9]

The Association's role during all of this was peripheral, *until* it learned that a settlement had been obtained. It now complains that it was excluded from the settlement negotiations against its will.[10] However, it admits that it was aware of ongoing negotiations between plaintiffs and the Commissioner, and of its exclusion from such negotiations since at least October, 1990. In spite of that, it took no action to press the case forward or protect its interest in the interpretation and application of section 641.[11] If it was concerned about the possibility of an outcome adverse to its interests,[12] it should have taken action at that time to press the lawsuit forward,[13] not waited until a settlement was negotiated only to find out that it disagrees with the negotiated terms. By failing to take action, the Association assumed the risk of an outcome adverse to its views and now seeks to reallocate the risk by the last-minute filing of a counterclaim. Permitting that result would work to the substantial prejudice of plaintiffs and the Commissioner.

Under the circumstances, we find no justification for allowing the amendment. The Association waited too long to assert its counterclaim. It was content to permit the Commissioner to push forward with the

action, and now, that it is dissatisfied with the ultimate result, it seeks to undo that reliance and champion its own cause. There is no just reason for allowing it to do so under the circumstances. See generally: *Federal Deposit Insurance Corp. v. Staudinger*, 797 F.2d 908 (10th Cir.1986) (district court did not abuse its discretion in denying defendant leave to amend his answer to assert a counterclaim sixteen months after he was first made aware of supporting facts) and *Owens–Illinois, Inc. v. Lake Shore Land Co.*, 610 F.2d 1185 (3d Cir.1979) (district court properly dismissed counterclaim filed to delay the entry of final judgment); *Perfect Plastics, supra*, 758 F.Supp. at 1081 (amendment to allow compulsory counterclaim granted although delay of more than one and one-half years); and *Bank of America National Trust and Savings Association v. Hotel Rittenhouse Associates*, Civ. No. 83–2809 (E.D.Pa. May 29, 1987), (available on WESTLAW at 1987 WL 11908) (motion to intervene filed after entry of a judgment or decree is presumptively untimely and " 'should be denied except in extraordinary circumstances.' ").

Although there is authority for the proposition that the two original parties cannot dispose of the rights and interests of an intervenor in a negotiated settlement (See, e.g, *Local Number 93, International As-*

---

**9.** See note 5 *supra.*

**10.** The Association states in its brief:

[N]either Intervenors, nor their counsel, were directly informed of the settlement discussions. And even once they were aware that discussions were taking place, Intervenors had no knowledge of the substance of those discussions. In fact, despite repeatedly having requested to participate and repeatedly having attempted to learn the form any settlement agreement might take, Intervenors were frozen out of the process until the Agreement was essentially in final form.

(Record Document No. 161, filed June 28, 1991, pp. 7–8)

**11.** The only noteworthy filing by the intervenors which appears in the court's docket sheet is a notice of deposition served on USAA (Record Document No. 139, filed March 21, 1991).

**12.** Further, the Association seeks an all or nothing result: a prohibition against USAA transacting insurance business in Pennsylvania unless it

divests itself of the Bank. It should have reasonably anticipated that this would not be the outcome of a negotiated settlement. Most negotiated settlements do not give either side 100% of what they are demanding, but by their very nature, represent a compromise on both sides.

The Association could have reasonably anticipated that it would be dissatisfied with the settlement terms if it clung to the belief that the anti-affiliation statute must be strictly construed against USAA, as it has done. This consideration makes the wait-and-see attitude which the Association adopted doubly unreasonable.

**13.** The Association states in its own defense, that its members were "purposefully *excluded* from settlement talks, over their strenuous objections, and were made privy to the terms of the agreement only once its substantive terms were final." (Record Document No. 161, filed June 28, 1991, p. 3) This, if nothing else, should have alerted it to the fact that it was risky to rely solely on the Commissioner to promulgate its interests and prompted it to take appropriate action to protect its own interests.

*sociation of Firefighters, AFL–CIO, C.L.C. v. City of Cleveland,* 478 U.S. 501, 528–29, 106 S.Ct. 3063, 3078–79, 92 L.Ed.2d 405 (1986)), such decisions are distinguishable from this case. In those actions, the intervenor had asserted a claim prior to settlement. See, e.g. *Wheeler v. American Home Products Corp.,* 563 F.2d 1233, republished at 582 F.2d 891 (5th Cir.1977). Here, there was no claim by the Association throughout the two-year pendency of its intervenorship. Although it has been a party to this action since 1987, it had no claim of its own before the court until after the original parties executed a settlement agreement.[14]

*Failure to state a cause of action*

■ Leave to file the counterclaim is subject to denial on another ground as well. Leave to amend should be denied if the proposed claim is legally deficient. *Shearson/American Express, Inc. v. Mann,* 814 F.2d 301, 308 (6th Cir.1987). Plaintiffs argue that the Association's claim fails to state a cause of action because private parties have no enforcement authority under the Pennsylvania Insurance Code. The relief which the Association seeks is an injunction prohibiting USAA from selling insurance in Pennsylvania unless and until it divests itself of holdings in the Bank. If granted, it would be the equivalent of revoking USAA's and its subsidiaries' licenses to transact insurance business in Pennsylvania, an enforcement action, which plaintiffs argue is vested exclusively in the Commissioner.

■ As a general rule, agency decisions not to commence or pursue an enforcement action are not subject to judicial review. This rule was adopted by the United States Supreme Court in *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) as applicable to agency non-enforcement decisions governed by the Administrative Procedure Act, 5 U.S.C. § 501 *et seq.* The Court ruled that there is a presumption against judicial review of agency non-enforcement decisions. The presumption is overcome if the statute or regulations at issue spell out clearly the criteria applied in deciding whether to pursue enforcement action or if there is a clear indication that the legislature intended the courts to review such determinations. Accord: *Clementson v. Brock,* 806 F.2d 1402, 1404 (9th Cir.1986) and *New Jersey, Department of Environmental Protection v. Gloucester Environmental Management Services, Inc.,* 668 F.Supp. 404 (D.N.J. 1987), ("The EPA's prosecutorial discretion in taking enforcement actions is presumptively immune from judicial review.").

The Supreme Court based its decision in *Heckler* on the following considerations:

[A]n agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus the agency must not only assess whether a violation has occurred, but whether resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and indeed, whether the agency has enough resources to undertake the action at all.... The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities.

*Heckler, supra,* 470 U.S. at 831–32, 105 S.Ct. at 1655–56.

Although *Heckler* involved a federal agency governed by the Administrative Procedures Act, the presumption it adopted has been applied to state agency non-enforcement decisions as well, and specifically to decisions of the Pennsylvania Insurance Commission. In *Scott v. American Bar Association,* 652 F.Supp. 1419, 1421 (E.D.Pa.1987), citing *Heckler,* the Third Circuit ruled that the Pennsylvania Insurance Commission's "decision not to undertake enforcement activities is a discretion-

**14.** Intervenor status alone did not automatically confer on it a claim before the court. Like any other party, intervenors are required to file pleadings in compliance with the procedural rules. Courts are free to interpret this requirement liberally if no prejudice results. If, however, there is resulting prejudice to the other parties, the rules are less forgiving. *Shevlin v. Schewe,* 809 F.2d 447, 450 (7th Cir.1987).

ary one", that is not subject to judicial review.

Finally, it is relevant that there is no right on the part of private citizens to file an enforcement action against an insurer under Pennsylvania law.[15] Both the Pennsylvania and federal courts have ruled that the Pennsylvania Insurance Code does not create a private right of action or enforcement. *Park Ins. Agency v. National Grange Mutual Insurance Co.*, 722 F.Supp. 1206 (E.D.Pa.), *aff'd per curiam*, 888 F.2d 1381 (3d Cir.1989), (private parties cannot sue to enforce anti-redlining provisions of the Insurance Code) and *D'Ambrosio v. Pennsylvania National Mutual Insurance Co.*, 494 Pa. 501, 431 A.2d 966 (1981),[16] ("[S]tatutory prohibitions are enforced by the Insurance Commissioner of Pennsylvania ... There is no evidence to suggest, and we have no reason to believe, that the system of sanctions established under the Unfair Insurance Practices Act must be supplemented by a judicially created cause of action."). Cf. *Brownell v. State Farm Mutual Insurance Co.*, 757 F.Supp. 526, 531 (E.D.Pa.1991), ("[T]he [Unfair Insurance Practices Act] UIPA "does not bar a private cause of action against an insurance carrier under the [Consumer Protection Law] CPL.").

---

15. We note that there is also an issue of standing. In suits against a state agency challenging its refusal to take enforcement action, "[t]he party who invokes [judicial] power must be able to show ... that he has sustained or is immediately in danger of sustaining some direct injury as the result of [a statute's] enforcement." *Muckway v. Craft*, 789 F.2d 517, 520 (7th Cir.1986), citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 618, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973). We do not resolve the standing issue here, but merely note its existence.

16. *D'Ambrosio, supra*, was superseded by 42 Pa. C.S.A. § 8371, (Purdon's Supp.1991), which took effect on July 1, 1990. *Galati v. Cetola*, 776

F.Supp. 1054 (E.D.Pa.1991). Section 8371 provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%;

(2) Award punitive damages against the insurer; or

(3) Assess court costs and attorney fees against the insurer.

The new statute does not abrogate the proposition for which we cite *D'Ambrosio, supra*.