**UNITED STATES of America, Plaintiff,**

v.

**PRINCETON GAMMA–TECH, INC., Defendant, Third–Party Plaintiff,**

v.

**George SANDS, et al., Third–Party Defendants.**

**Civ. No. 91–809 (CSF).**

United States District Court,
D. New Jersey.

March 29, 1993.

Myles E. Flint, Acting Asst. Atty. Gen. by Daniel W. Dooher, Trial Atty., Environment & Natural Resources Div., U.S. Dept. of Justice, Washington, DC, Amelia M. Wagner, Asst. Regional Counsel, U.S. E.P.A., Region II, New York City, Michael Chertoff, U.S. Atty., by Irene Dowdy, Asst. U.S. Atty., D.N.J., Trenton, NJ, for plaintiff.

Hannoch Weisman by Jeffrey A. Cohen, Roseland, NJ, Dechert, Price & Rhoads by A. Patrick Nucciarone, Princeton, NJ, for defendant Princeton Gamma–Tech, Inc.

Lavin, Coleman, Finarelli & Gray by Seamus P. McCaffery, Mount Laurel, NJ, Portner & Greenberg by Henry N. Portner, Princeton, NJ, for third-party defendants George Sands, Estelle Sands, Jeffrey Sands and Hilton Realty Co. of Princeton.

Giordano, Halleran & Ciesla by Paul H. Schneider, Middletown, NJ, for third-party defendant Fifth Dimension, Inc.

Goldshore, Wolf & Lewis by Stuart J. Lieberman, Lawrenceville, NJ, for third-party defendant J & R Associates, Ltd.

Boglioli & O'Mara by Bernard F. Boglioli, West Long Branch, NJ, for third-party de-

fendants Frederick DiCiccio and Cornelius Van Cleef.

William T. Sutphin, Princeton, NJ, Babst, Calland, Clements & Zomnir by Stephen Baicker–McKee, Pittsburgh, PA, for third-party defendants Joseph A. Baicker and Alden Sayres.

## OPINION

CLARKSON S. FISHER, District Judge.

Before the court is the motion of plaintiff, United States of America ("United States"), for a ruling on the appropriate scope and standard of review on the United States Environmental Protection Agency's ("EPA's") remedy selection and for a protective order in discovery, limiting discovery on the EPA's remedy selection to the administrative records certified to the court. Defendant, Princeton Gamma–Tech, Inc. ("PGT"), has submitted opposition to plaintiff's motion and filed a cross-motion for a preliminary injunction, for an order remanding this matter to the EPA and for an order staying litigation. Third-party defendants George Sands, Estelle Sands, Jeffrey Sands and Hilton Realty Company of Princeton, Inc. ("Hilton Realty") have submitted an affidavit in support of PGT's cross-motion. Plaintiff has submitted opposition to PGT's cross-motion.

PGT has also filed a motion for leave to file and serve a counterclaim against plaintiff and a third-party complaint against the New Jersey Department of Environmental Protection and Energy ("NJDEPE"). Plaintiff is opposing this motion. The court has considered the parties' written submissions and oral argument of counsel. For the reasons set forth below, plaintiff's motion is granted in its entirety and defendant's motions are denied in their entirety.

These motions arise out of an action brought by the United States, plaintiff, against PGT pursuant to sections 107 and 113 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9607 and 9613, as amended by the Superfund Amendments and Reorganization Act of 1986, Pub.L. No. 99–499, 100 Stat. 1613 (1986) ("SARA"), to recover costs incurred in responding to releases and threatened releases of hazardous substances, specifically, trichloroethylene ("TCE"), into the environment in the Montgomery Township Housing Development and the Rocky Hill Municipal Well Field Sites ("Sites") in Somerset County, New Jersey.

In 1983, the Sites were included on the National Priority List ("NPL"), a list of hazardous waste sites whose contamination is so hazardous that it necessitates cleanup with the use of funds from the Hazardous Substances Response Trust Fund ("Superfund"). The United States also seeks a declaratory judgment that PGT is liable for future costs to be incurred by the government as a result of cleanup of the Sites.

The government commenced this action against PGT on February 25, 1991. Plaintiff named PGT as the only defendant. *See* Pl.'s Compl. PGT answered the complaint on April 4, 1991. On November 4, 1991, PGT brought a third-party complaint naming ten third-party defendants as well as "unidentified individuals, corporations, partnerships, associations and/or persons." *See* Def.'s Third–Party Compl.

Prior to the filing of plaintiff's complaint, the EPA contracted with the then New Jersey Department of Environmental Protection ("NJDEP") to perform a Remedial Investigation and Feasibility Study ("Study") at the Sites. Two Records of Decision ("ROD") were issued as a result of the Study. The first ROD ("ROD I") was issued on September 29, 1987, and can be found in the Montgomery Township Administrative Record for Operable Unit 1. The second ROD ("ROD II") was issued on June 30, 1988, and can be found in the Montgomery Township Administrative Record for Operable Unit 2 and in the Rocky Hill Administrative Record.

ROD I called for the installation of an alternative water supply for the residents of Montgomery Township and the permanent sealing of the private wells on the Montgomery Township Site. By September 1990, all residences on the Site were connected to an alternative water supply.

ROD II provided that the second phase of the remedy would include: (1) extraction and

flushing of contaminated water by using extraction wells at PGT and at the Sites, followed by reinjection of the water back into the water bearing zones; (2) connecting any remaining residences to the Elizabethtown Water Company Distribution System; (3) sealing of any remaining private wells within the contaminant plume, and (4) implementing a groundwater sampling program to monitor the effectiveness of the clean-up, which includes eight monitoring wells placed throughout the plume. It is projected that this remedy will take at least five years to complete.

Plaintiff now moves for a ruling on the appropriate scope and standard of review of the EPA's remedy selection. Plaintiff argues that section 113(j), 42 U.S.C. § 9613(j), of CERCLA requires that the court's review of the EPA's remedy selections be limited to whether the remedy selections were arbitrary and capricious, based upon the administrative records. Moreover, plaintiff contends that well-established principles of administrative law require the use of an "arbitrary and capricious" standard.

The enactment of CERCLA in 1980 supplied the EPA and other governmental agencies with a broad " 'array of mechanisms to combat the increasingly serious problem of hazardous substance releases.' " *United States v. Monsanto Co.*, 858 F.2d 160, 167 (4th Cir.1988), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989) (quoting *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1078 (1st Cir.1986)). Section 104(a) of CERCLA authorizes the government to take a "response measure" whenever there is a "release" or "threat of release" of any "hazardous substance" into the environment. 42 U.S.C. § 9604(a)(1). Section 107 of CERCLA additionally provides that governmental response costs will be recovered from "responsible persons" whenever possible. 42 U.S.C. § 9607.

CERCLA was amended in 1986 by SARA. SARA added section 113(j), requiring that judicial review of EPA response actions be limited to the administrative record to determine whether or not the decision was arbi-

trary and capricious. 42 U.S.C. § 9613(j). Section 113(j) provides, in pertinent part:

(j) Judicial review

(1) Limitation

In any judicial action under this chapter, judicial review of any issues concerning the adequacy of any response action taken or ordered by the President shall be limited to the administrative record. Otherwise applicable principles of administrative law shall govern whether any supplemental materials may be considered by the court.

(2) Standard

In considering objections raised in any judicial action under this chapter, the court shall uphold the President's decisions in selecting the response action unless the objecting party can demonstrate, on the administrative record, that the decision was arbitrary and capricious or otherwise not in accordance with law.

*Id.*

Courts, when reviewing EPA response actions in cases brought pursuant to section 107 of CERCLA, have applied the plain language of section 113(j) with regard to the standard and scope of review of the administrative record. *United States v. Rohm & Haas Co., Inc.*, 669 F.Supp. 672, 676–77 (D.N.J.1987); *United States v. Nicolet, Inc.*, 17 Envtl.L.Rep. (Envtl.L.Inst.) 21091, 21092, 1987 WL 4893 (E.D.Pa. May 12, 1987). "Because determining the appropriate removal and remedial action involves specialized knowledge and expertise, the choice of a particular cleanup method is a matter within the discretion of the EPA." *United States v. Northeastern Pharmaceutical & Chem. Co. Inc. ("NEPACCO")*, 810 F.2d 726, 748 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987). "The applicable standard of review is whether the agency's choice is arbitrary and capricious." *Id.*

The Court of Appeals for the Sixth Circuit, in addressing the standard-of-review issue, noted that "CERCLA has properly left the scientific decisions regarding toxic substance cleanup to the President's delegatee, the EPA administrator and his staff." *United States & State of Michigan v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1424 (6th

Cir.1991). "When examining this kind of scientific determination ... a reviewing court must generally be at its most deferential." *Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc.,* 462 U.S. 87, 103, 103 S.Ct. 2246, 2255, 76 L.Ed.2d 437 (1983). *See also United States v. Ward,* 618 F.Supp. 884, 900 (E.D.N.C.1985) ("In the end, however, the EPA is required to act upon the informed scientific opinion of its employees. The agency's decision is, therefore, entitled to great deference from this court."). The court's role, as section 113(j) makes clear, "is one of review on the administrative record, searching for errors of procedure and for glaring omissions or mistakes which indicate that EPA has acted arbitrarily and capriciously." *Akzo Coatings of America,* 949 F.2d at 1424.

Notwithstanding section 113(j), principles of administrative law under the Administrative Procedure Act ("APA") require using the "arbitrary and capricious" standard for review of the EPA's response action decisions. 5 U.S.C. § 706(2)(A). Section 10(e)(2)(A) of the APA provides that the reviewing court shall:

> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; ...

5 U.S.C. § 706(2)(A).

In explaining the deferential nature of this "arbitrary and capricious" standard of review, the Supreme Court has stated:

> To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). When reviewing the determinations of the EPA, courts give considerable deference to the agency, recognizing the agency's expertise. *Chemical Mfrs.*

*Ass'n v. Natural Resources Defense Council, Inc.,* 470 U.S. 116, 125, 105 S.Ct. 1102, 1107, 84 L.Ed.2d 90 (1985).

Moreover, courts have held that "[w]hen specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts, even if, as an original matter, a court might find contrary views more persuasive." *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 1861, 104 L.Ed.2d 377 (1989). *De novo* review cannot be reconciled with the complex, technical requirements for the cleanup of hazardous waste sites. With regard to CERCLA, a court "cannot and will not substitute its layman's judgment for the scientific conclusions made by the EPA after years of in-depth study of the ... [Superfund] sites." *Ward,* 618 F.Supp. at 900.

The EPA's decision to install an alternative water supply (Rod I) and to implement a pump and groundwater treatment system for the contaminated plume (Rod II) are the result of the type of "technical expertise" to which this court should give deference. Thus, consistent with section 113(j) of CERCLA and well-established principles of administrative law, the standard of review of the EPA's response actions relating to the past and prospective clean-up of the Sites is to be the "arbitrary and capricious or otherwise not in accordance with law" standard.

Plaintiff additionally moves for a protective order in discovery, seeking to foreclose discovery outside the administrative records on the issue of EPA's remedy selection for the Sites. Plaintiff wishes to limit discovery on EPA's remedy selection to the administrative records certified to this court.

On December 17, 1992, the United States forwarded by express mail for filing on December 18, 1992, copies of the administrative records for the Sites. Plaintiff acknowledges that "defendant PGT is entitled to extensive discovery on liability and cost issues, as it is entitled to *de novo* review by the Court on these issues." *See* Pl.'s Br. in Supp. of Mot. for Ruling on the Appropriate Scope and Standard of Review of Agency Remedy Selection and Mot. for Protective Order ("Pl.'s

Br.") at 20. However, plaintiff argues, "PGT may not seek discovery beyond the Administrative Records, in depositions or interrogatories, to explore the reasoning behind EPA's selection of the remedy for both the Montgomery Township and Rocky Hill Sites." *See id.*

This court has held that judicial review of the adequacy of the response action taken at the Sites is to be judged using an "arbitrary and capricious" standard. Moreover, as has previously been pointed out, CERCLA provides that "judicial review of any issues concerning the adequacy of any response action taken or ordered by the President shall be limited to the administrative record. Otherwise applicable principles of administrative law shall govern whether any supplemental materials may be considered by the court." 42 U.S.C. § 9613(j)(1).

As the House Report on the SARA amendments notes: "[L]imiting judicial review of response actions to the administrative record expedites the process of review, avoids the need for time-consuming and burdensome discovery, reduces litigation costs, and ensures that the reviewing court's attention is focused on the criteria used in selecting the response." H.R.Rep. No. 253, 99th Cong., 1st Sess., pt. 1, at 81 (1985), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2863. "As a general rule, review on the administrative record eliminates the need for discovery, as the administrative record contains all that is relevant to the decision in issue." *United States v. Seymour Recycling Corp.*, 679 F.Supp. 859, 865 (S.D.Ind.1987) (citing *United States v. Morgan*, 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941)).

■ Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the court has broad discretion to control and, where appropriate, to deny, limit or qualify discovery. Fed. R.Civ.P. 26(c). Rule 26(c)(4) allows the court to order that "certain matters not be inquired into, or that the scope of the discovery be limited to certain matters." Fed.R.Civ.P. 26(c)(4). Where the scope of judicial review is limited to the administrative record, discovery beyond that record is generally inappropriate and not relevant. *Texas Steel Co.*

*v. Donovan*, 93 F.R.D. 619, 620 (N.D.Tex. 1982).

■ Courts do sometimes find under limited circumstances that the administrative record must be supplemented. Expanding review beyond the record or permitting discovery may be justified when (1) judicial review is frustrated because the record fails to explain the agency's action, *Camp v. Pitts*, 411 U.S. 138, 142-43, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); (2) the record is incomplete, *Texas Steel Co.*, 93 F.R.D. at 621; (3) the agency failed to consider all relevant factors, *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985); or (4) there is a strong showing that the agency engaged in improper behavior or acted in bad faith, *Citizens to Preserve Overton Park*, 401 U.S. at 420, 91 S.Ct. at 825. Furthermore, it is the defendant's burden to demonstrate any such inadequacies in the record. *See Texas Steel Co.*, 93 F.R.D. at 621.

■ PGT has failed to show that any of these limited exceptions exist in this case. PGT asks this court to consider Dr. Dan D. Raviv's affidavit and other supporting papers because they "[1] present evidence which serves to deny agency predictions about contamination within the deep zone and about the yield and injection rate of the aquifer to be remediated, [2] presents (sic) an acceptable alternate remedy which was not considered by EPA but which minimizes risk rather than exacerbates it and [3] helps [sic] to explain certain gaps in EPA's unclear record." Def.'s Br. in Supp. of Mot. for Injunctive Relief and Remand and in Opp'n to the United States' Mot. for Ruling on the Appropriate Scope and Standard of Review and for Protective Order ("Def.'s Br.") at 28. Additionally, third-party defendants George Sands, Estelle Sands, Jeffrey Sands and Hilton Realty have asked this court to consider the affidavit of William A. Stone, Jr., in support of PGT's motion for injunctive relief and remand.

The court has reviewed the administrative records in this case and has determined that they are complete and more than adequately explain the decision-making process followed by the EPA in its selection of the remedy for

the Sites. The records are a detailed compilation of the facts, evidence and circumstances leading up to the EPA's decision to take action at the Sites and show all the relevant factors considered by the EPA before the selection of the remedy.

In short, PGT has failed to explain how it is exempted from the well-established rule that, in evaluating the EPA's remedy selection under the "arbitrary and capricious" standard, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp*, 411 U.S. at 142, 93 S.Ct. at 1244. *See also Florida Power & Light Co.*, 470 U.S. at 743–44, 105 S.Ct. at 1606–07. PGT had an opportunity to submit comments to the EPA during the public comment period, which it did and which were placed on the public record.

The court therefore holds that section 113(j) of CERCLA requires the court to review only the administrative record to determine if the EPA's decisions were arbitrary and capricious. Because there is no basis for a *de novo* review of EPA's remedy selection, there is consequently no need for discovery outside the administrative records regarding the remedy selection. Accordingly, plaintiff's motion for a protective order limiting discovery on EPA's remedy selection to the administrative records certified to this court is granted.

Plaintiff also seeks to have the court's rulings apply to third-party defendants. On December 2, 1991, this court ordered all claims in this matter to be litigated in the same proceeding. *See* Ct.'s Order of December 2, 1991. As the court's reasoning applies with equal force to third-party defendants, the court holds that the "arbitrary and capricious" standard applies to any third-party claims, and that the third-party defendants are also foreclosed from conducting discovery outside the administrative records on the issue of EPA's remedy selection for the sites.

■ Turning now to PGT's [1] cross-motion for injunctive relief, PGT filed this motion for a preliminary injunction requesting, *inter*

*alia,* that this court order the EPA "to cease the installation of wells that are 'open-hole' into the deep zone aquifer beneath PGT's property ..., to encase all existing 'open-hole' wells at the Site, and to cease construction of the remedial system provided for in EPA's [June 30, 1988] Record of Decision II ["ROD II"], and for an order staying litigation." *See* Def.'s Notice of Cross–Mot. for Prelim.Inj., January 20, 1993.

Plaintiff contends that, pursuant to section 113(h) of CERCLA, this court lacks jurisdiction to preliminarily enjoin the EPA's remedy. 42 U.S.C. § 9613(h). This court agrees and denies PGT's request for lack of subject matter jurisdiction.

Section 113(h) of CERCLA provides that: No Federal court shall have jurisdiction under Federal law ... to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:

(1) An action under section 9607 of this title to recover response costs or damages or for contribution.

\*    \*    \*    \*    \*    \*

(4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site. 42 U.S.C. § 9613(h).

In *Neighborhood Toxic Cleanup Emergency v. Reilly,* 716 F.Supp. 828 (D.N.J.1989), an unincorporated association sought to enjoin implementation of a hazardous waste site clean-up plan, alleging that the plan posed a health hazard to the general public. 716 F.Supp. at 830. The district court held that judicial review was not available until after any given phase of the plan was completed, and such a restriction did not violate due

---

**1.** Third-party defendants George Sands, Estelle Sands, Jeffrey Sands and Hilton Realty have

submitted the affidavit of William A. Stone, Jr. in support of PGT's cross-motion.

process rights. *Id.* at 837. The court noted that, "[i]nterpreting the relevant legislative history, the courts considering the question have generally agreed that section 9613(h) postpones judicial review until after a discrete phase of remedial action is complete." *See id.* at 832 and cases cited therein.

To support its conclusion that "Congress intended judicial review of EPA remedial action only after some action is undertaken," the court looked to the language of subsection (4), "Congress's use of the past tense ('removal or remedial action taken'; 'was in violation of') combined with its final sentence ('Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.')." *Id.* at 833. The court also noted that the Joint Conference Committee Report regarding SARA "clearly indicates that a citizens suit will not lie to challenge a choice of remedy until after a distinct phase of the cleanup is completed." *Id.* at 834 (citing Joint Explanatory Statement of the Comm. of Conference, H.R.Rep. No. 99–962, 99th Cong., 2d Sess. 224, *reprinted in* 1986 U.S.C.C.A.N. 3276, 3317).

The court went on to conclude that, "[b]ecause the court lacks subject matter jurisdiction under CERCLA/SARA to review EPA's selection of remedy, it [could not] reach the merits of plaintiff's claim for injunctive relief." *Id.* at 837. The court pointed out that plaintiff's claim sought "to force EPA and DEP to reconsider their decision to order completion of a particular remedy." *Id.* at 834. "[I]n no event," the court declared, "is judicial review to delay the start of a cleanup remedy." *Id.*

The remedy at issue in PGT's motion for a preliminary injunction is the remedy selected by the EPA in ROD II. As this remedial action has not yet been completed, the court lacks jurisdiction to preliminarily enjoin the EPA's selected remedy. *See id.* at 837. Therefore, PGT's motion for injunctive relief is denied for lack of subject matter jurisdiction.

PGT alleges that section 113(h) of CERCLA "does not bar PGT's claim" and that the

EPA's selected remedy will cause irreparable harm. *See* Def.'s Br. at 3, 22. In support of its position, PGT relies heavily on the district court decision of *Cabot Corp. v. United States Envtl. Protection Agency*, 677 F.Supp. 823 (E.D.Pa.1988). That court explored the language and legislative history of section 113(h) and distinguished between a claim that alleges only monetary harm, which section 113(h) may bar, and a claim involving irreparable harm, which "arguably permits challenges to EPA's plans even before they have been implemented." *Id.* at 828.

This court, however, will follow the reasoning of the district court in *Neighborhood Toxic Cleanup Emergency v. Reilly*, 716 F.Supp. 828 (D.N.J.1989). That court noted that the "*Cabot Corp.* court's position might make good sense as a matter of policy; however, although the language of section 9613(h)(4) arguably supports its position, the legislative history by and large fails to support it." *Id.* at 833. Furthermore, the *Neighborhood Toxic Cleanup Emergency* court pointed out that the distinction between health and environmental harm as opposed to monetary harm set forth in *Cabot* was merely dicta. *Id.* at 832.

PGT also seeks to have this matter remanded to the EPA "for selection of an alternate remedy which does not create irreparable harm."[2] *See* Def.'s Br. at 18. PGT claims that the EPA's selected remedy is arbitrary, capricious and not in accordance with law. *See id.* (citing 42 U.S.C. § 9613(j)(2); 5 U.S.C. § 706(2)(A)).

In support of its motion to remand, PGT asks the court to consider the affidavit of Dr. Dan D. Raviv, along with other supporting documents, for the purpose of assisting it in its determination of whether to enjoin further open-hole well installation and remand ROD II for reconsideration of the selected remedy. Additionally, third-party defendants George Sands, Estelle Sands, Jeffrey Sands and Hilton Realty have submitted the affidavit of William A. Stone, Jr. in support of PGT's motion to remand. As the court

---

**2.** The court will, in the interest of judicial economy and efficiency, consider PGT's request for remand even though PGT made no mention of this request in its notice of cross-motion. *See* Def.'s Notice of Cross–Mot. for Prelim.Inj., January 20, 1993.

has held that PGT has failed to demonstrate that judicial review or discovery concerning the EPA's remedy selection should be expanded beyond the available administrative record, PGT's motion to remand for selection of an alternative remedy is denied. The fact that PGT disagrees with the EPA's decisions does not make those decisions arbitrary and capricious. *See Coalition on Sensible Transp., Inc. v. Dole,* 826 F.2d 60, 66 (D.C.Cir.1987).

PGT seeks to have this matter remanded on another ground. PGT contends that ROD II should be remanded because only one of the third-party defendants had an opportunity to comment on the proposed remedy prior to its issuance. The court disagrees.

In 1988, defendant PGT and third-party defendant Fifth Dimension, Inc. were issued general notice letters which alerted them that each was a potentially responsible party and that the EPA had selected a remedy for clean-up of the Sites. *See* Pl.'s Br., Ex. 3. The notice letters also informed the parties where the administrative records were located and that they were available for their review. *Id.*

By letter dated January 9, 1992, defendant PGT and third-party defendants were informed by plaintiff's counsel that the administrative records were available for inspection and review. *Id.,* Ex. 4. Since that date, all third-party defendants have had an opportunity to provide comments to the records. To date, no third parties have sought to do so. Moreover, defendant PGT and third-party defendants had been notified as early as May 22, 1992, that plaintiff would be seeking judicial review of EPA's remedy selection based upon the administrative records. *Id.*

Accordingly, PGT's motion to remand on the ground that third-party defendants have been denied due process with regard to the administrative records is denied. Additionally, as PGT's motion for a preliminary injunction and to remand has been denied, there is no reason why this litigation should be

stayed, and PGT's motion for a stay is accordingly also denied.[3]

PGT additionally moves for an order, pursuant to Fed.R.Civ.P. 15(d), permitting PGT to file and serve a counterclaim against plaintiff and a third-party complaint against the New Jersey Department of Environmental Protection and Energy ("NJDEPE").

Rule 15 of the Federal Rules of Civil Procedure provides, in pertinent part, that:

> (d) Supplemental Pleadings. Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.

Fed.R.Civ.P. 15(d).

■ Leave to file supplemental pleadings under Fed.R.Civ.P. 15(d) is a matter within the sound discretion of the trial court. *See generally* 6A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1504, at 177 (1990). Although leave to amend should be freely given when justice so requires, *see* Fed.R.Civ.P. 15(a), courts, in making such a determination, weigh a number of factors, including whether the claim is timely, whether the claim is compulsory, whether the pleader has acted in good faith and whether the pleading raises a meritorious claim. *United Servs. Auto. Ass'n v. Foster,* 783 F.Supp. 916, 919 (M.D.Pa.1992).

■ In a scheduling order filed on December 19, 1991, Magistrate Judge Freda L. Wolfson ordered that "[a]ny motion to amend the pleadings must be filed no later than *August 14, 1992,* and made returnable no later than *September 7, 1992*" (emphasis in original). *See* Ct.'s Order of December 18, 1991, Para. 3. Moreover, paragraph 16 of this order states that:

> 16. Since all dates set forth herein are established with the assistance and knowledge of counsel, *there will be no extensions*

---

**3.** By letters received by the court on March 4, 1993, third-party defendants J & R Associates, Ltd., and Fifth Dimension, Inc. requested that, in the event defendant's motion for a stay is granted, a provision be included in the order authorizing them to file a stipulation of dismissal and a motion for summary judgment. As defendant's motion for a stay is denied, the court need not address third-party defendants' request.

*except for good cause shown* and by leave of Court, even with consent of all counsel. *See id.* (emphasis added). In a later scheduling order filed November 24, 1992, Magistrate Judge Wolfson ordered that "[a]ny motion to add new parties shall be filed by *December 11, 1992* and made returnable on *January 4, 1993.*" *See* Ct.'s Order of November 24, 1992, Para. 1 (emphasis in original).

On January 20, 1993, PGT filed a motion for leave to file a supplemental pleading against plaintiff. On January 27, 1993, PGT filed an amended motion for leave to file supplemental pleadings, consisting of a counterclaim against plaintiff and a third-party complaint against the NJDEPE.[4] PGT additionally pointed out that its amended notice of motion and proposed pleadings "supercede[ ] the Notice of Motion filed by PGT on January 20, 1993." *See* Def.'s Amended Notice of Cross–Mot. for Leave to File Supplemental Pleadings, January 27, 1993.

Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, a magistrate judge is authorized to enter a scheduling order that limits the time for filing of motions and the completion of discovery after consultation with counsel for the parties. Fed.R.Civ.P. 16(b). Rule 16(b) further provides that a scheduling order "shall not be modified except by leave of the judge or a magistrate when authorized by district court rule upon a showing of good cause." *Id.* Moreover, the Third Circuit has held that Rule 16 " 'scheduling orders are at the heart of case management' " and cannot be "flouted." *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 341 n. 4 (3d Cir.1990) (quoting *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir.1986)).

PGT had been on notice that any motion to amend the pleadings was due on August 14, 1992, and any motions to add new parties were to be filed by December 11, 1992. Yet its original notice for leave to file a supplemental pleading against plaintiff was filed on January 20, 1993. Moreover, PGT's amended notice for leave to file supplemental plead-

ings, consisting of a counterclaim against plaintiff and a third-party complaint against the NJDEPE, was filed on January 27, 1993.

Additionally, in support of its motion to file supplemental pleadings, PGT has neither shown good cause as to why the court should accept its late pleadings nor requested an extension from the court. In fact, in its amended notice of motion, PGT acknowledge that its motion "for leave to file a counterclaim ... and to file a third-party complaint ... is addressed to the sound discretion of the district judge and no brief is required." *See* Def.'s Statement Pursuant to Local Rule 12C that No Br. is Required, January 27, 1993.

Numerous other federal courts have refused to overlook filing deadlines. *See, e.g., Edwards v. Cass County, Tex.*, 919 F.2d 273, 275 (5th Cir.1990); *Dedge v. Kendrick*, 849 F.2d 1398 (11th Cir.1988); *Doe v. British Univs. North American Club*, 788 F.Supp. 1286, 1297 (D.Conn.1992); *State of N.Y. v. Allied Corp.*, 789 F.Supp. 93, 98 n. 12 (N.D.N.Y.1992); *Gear v. Constantinescu*, 741 F.Supp. 525, 526 (D.N.J.1990); *Pridemore v. Rural Legal Aid Soc'y of West Cent. Ohio*, 625 F.Supp. 1180, 1182 (S.D.Ohio 1985). Moreover, courts have been less likely to permit a litigant to file an untimely motion where no extension has been sought from the court. *See Edwards*, 919 F.2d at 275 (noting that a district court's refusal to allow the filing of an untimely motion, especially where no extension had been sought, was well within the court's discretion); *Gear*, 741 F.Supp. at 526 (in denying motion as untimely, court pointed out that litigant could have asked for extension of time).

While the court's rules may permit the court to forgive PGT's lapse, they do not require it to do so. *See* D.N.J.Gen.R. 1 A. With no valid basis for showing that its untimeliness is justified, PGT's motion for leave to file supplemental pleadings is denied. An order accompanies this opinion. No costs.

---

**4.** PGT's proposed counterclaim and third-party complaint allege, *inter alia,* that certain remedial actions taken by the EPA and NJDEPE have caused and will continue to cause environmental damage to PGT's property in Rocky Hill, New Jersey. PGT seeks, *inter alia,* damages and contribution from plaintiff and NJDEPE for alleged environmental harm caused by their actions.

498

## ORDER

THIS MATTER having come before the court on the motion of plaintiff, United States of America, for a ruling on the appropriate scope and standard of review of the United States Environmental Protection Agency's ("EPA's") remedy selection, and for a protective order in discovery, limiting discovery on the EPA's remedy selection to the administrative records certified to the court; and on motion brought by defendant, Princeton Gamma–Tech., Inc. ("PGT"), for a preliminary injunction, for an order remanding this matter to the EPA, and for an order staying this litigation; and on motion brought by defendant, PGT, for leave to file and serve a counterclaim against plaintiff and a third-party complaint against the New Jersey Department of Environmental Protection and Energy ("NJDEPE"); and the court having considered the written submissions and oral argument of counsel; and for good cause shown,

IT IS on this 24th day of March, 1993,

ORDERED that plaintiff's motion for a ruling as to the appropriate scope and standard of review of the agency's action and for a protective order in discovery is granted; and it is further

ORDERED that judicial review of the remedy selection by the EPA in this case shall be limited to the administrative records for the Montgomery Township Housing Development and Rocky Hill Municipal Wellfield Superfund Sites ("Sites"), in accordance with section 113(j) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9613(j); and it is further

ORDERED that defendant PGT and all third-party defendants shall be precluded from conducting discovery on the basis of preparing for a *de novo* hearing on the remedy selected by the EPA in its response actions for the Sites; and it is further

ORDERED that the EPA's response actions shall be upheld unless the court determines that, based on the administrative record, they are arbitrary and capricious or otherwise not in accordance with law, pursuant to section 113(j) of CERCLA, 42 U.S.C. § 9613(j); and it is further

ORDERED that defendant PGT's motion for a preliminary injunction is denied; and it is further

ORDERED that defendant PGT's motion to remand this matter to the EPA is denied; and it is further

ORDERED that defendant PGT's motion for an order staying this litigation is denied; and it is further

ORDERED that defendant PGT's motion for leave to file supplemental pleadings is denied.