**ENVIRONMENTAL WASTE CONTROL, INC., d/b/a Four County Landfill, West Holding Co., Steven W. Shambaugh, and James A. Wilkens**

v.

**AGENCY FOR TOXIC SUBSTANCES AND DISEASE REGISTRY.**

Civ. No. 1:90–cv–2105–ODE.

United States District Court, N.D. Georgia, Atlanta Division.

May 3, 1991.

John A. Sherrill, Terrence McQuade, Glass, McCullough, Sherrill & Harrold, Atlanta, Ga., Donn H. Wray, George M. Plews, Pendygraft, Plews & Shadley, Indianapolis, Ind., for plaintiffs.

Daniel A. Caldwell, III, Asst. U.S. Atty., Atlanta, Ga., Daniel S. Goodman, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, D.C., Deborah Weimer, Centers for Disease Control, Atlanta, Ga., for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This case in which Plaintiffs seek judicial review of a report generated by Defendants in accordance with environmental laws is before the court on Defendant's motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted, and on Plaintiffs' motions to add documents omitted from the original complaint and to supplement their response to the motion to dismiss.

Plaintiffs' motions are hereby GRANTED.

The facts are straightforward even though a wealth of federal environmental law is implicated. Plaintiffs are owners and operators of a hazardous waste disposal facility ("the Landfill") in Fulton County, Indiana. Defendant ("the Agency") is an agency within the Public Health Service of the Department of Health and Human Services which performs research services of various kinds. *See,* 42 U.S.C. § 9604(i)(1).[1]

In an enforcement suit brought by the Environmental Protection Agency and tried without a jury in December, 1988 before the United States District Court for the Northern District of Indiana, Judge Miller permanently enjoined operation of the Landfill because of Plaintiffs' "dismal history of delay, misperformance, and noncompliance" with environmental laws and because of the public health risks posed by the Landfill. *U.S. EPA v. Environmental Waste Control, Inc.,* 710 F.Supp. 1172, 1247 (N.D.Ind.1989). The Court of Appeals for the Seventh Circuit affirmed the District Court *in toto.* 917 F.2d 327 (1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991).

At the behest of Senators Lugar and Quayle of Indiana, the Agency prepared a report denominated a "Health Assessment" on May 1, 1990. 42 U.S.C. § 9604(i)(6)(B) gives discretion to the Administrator of the Agency to perform a health assessment or not in cases where "individual persons" request one. A revised Health Assessment dated July 25, 1990 and attached to the complaint resulted from, according to the language of the report itself, "a public

---

1. This is § 104(i)(1) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (commonly known as "CERC- LA") as amended by the Superfund Amendments and Reauthorization Act of 1986 (or "SARA"), 42 U.S.C. § 9601–9675.

comment period ... conducted during May and June 1990" and "a public meeting ... conducted on July 2, 1990." H.A. of July 25, 1990 at 2–3. The Health Assessment is a seventeen-page document which describes in some detail the Landfill and its suspected or known hazards, discusses the health implications of these hazards, and makes a number of recommendations for the protection of public health. Included within the Health Assessment are discussions of certain pollutant data appended to the report.

Plaintiffs filed this suit on September 24, 1990, approximately eighteen months after Judge Miller shut down the Landfill and soon after the release of the revised Health Assessment.[2] In their complaint, Plaintiffs ask for judicial review of both the Health Assessment and the Agency's refusal to revise or make additions to the report in light of data and materials submitted by Plaintiffs. Plaintiffs allege that the Health Assessment contains false, misleading, and scientifically indefensible statements. They also allege that they have been denied due process in being excluded from the public hearings preceding the release of the revised Health Assessment. Finally, Plaintiffs allege tort damages to their business reputation and to the value of their property.

The Agency raises four arguments in support of its motion to dismiss for lack of subject matter jurisdiction under Fed.R. Civ.P. 12(b)(1). Its first two related arguments are that it has not engaged in either "agency action" or "final agency action" for purposes of the grant of jurisdiction to the district courts in the Administrative Procedure Act, 5 U.S.C. § 704 ("APA"). Third, it argues that the case is not ripe for review because the Health Assessment has no direct or immediate impact upon the company. Finally, the Agency argues that the specific prohibition against pre-enforcement review of the Health Assessment contained in 42 U.S.C. § 9613(h) prevails over the general conferral of subject-matter jurisdiction over agency action contained in the APA.

In its motion to dismiss for failure to state a claim upon which relief may be granted under Fed.R.Civ.P. 12(b)(6), the Agency contends that Plaintiffs' due process claim must fail because the Agency provided a public comment period. The Agency also argues that, the public comment period notwithstanding, the Agency went on to respond in detail to written submissions from Plaintiffs.

In response, Plaintiffs offer related arguments that preparation of the Health Assessment constitutes "agency action" or "final agency action" under the APA and that the case is ripe for review by this court. In this context, Plaintiffs take issue with case authority cited by the Agency. Next, Plaintiffs argue for an interpretation of 42 U.S.C. § 9613(h) which would not preclude judicial review under the APA in this case. Finally, Plaintiffs urge that the due process claim in their complaint should survive dismissal because the complaint alleges that Plaintiffs "received no notice" of the public hearings. Plaintiffs argue that the notice which the Agency alleges it did provide—advertisements in four newspapers, notice at a public library, and an announcement through a local radio station—is insufficient as a matter of law and that the Agency should have notified Plaintiffs by letter.

■ The court need not reach the parties' arguments relating to the availability of review under the APA (5 U.S.C. § 704) because 42 U.S.C. § 9613(h) takes precedence over the APA in this case. Section 9613(h) "clearly provides that federal courts do not have subject matter jurisdiction for pre-enforcement reviews of EPA removal actions pursuant to section 9604." *Dickerson v. Administrator, E.P.A.*, 834 F.2d 974, 977 (11th Cir.1987) (citing authorities). First, it is appropriate to look to the language of § 9613(h). That section reads, in relevant part:

> [n]o Federal court shall have jurisdiction under Federal law ... to review any

---

**2.** Plaintiffs allege venue to be proper in this court by virtue of the relevant statutory venue provision, 42 U.S.C. § 9613(b), and the Agency's maintenance of its principal office in Atlanta.

challenges to removal or remedial action selected under section 9604 of this title ... in any action except one of the following....

None of the exceptions are relevant here. The terms "removal" and "remedial action" are terms of art. The statute provides a very broad definition for "removal" at § 9601(23):

[t]he terms 'remove' or 'removal' means [sic] the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, *such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances*, the disposal of removed material, *or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare* or to the environment, which may otherwise result from a release or threat of release....

42 U.S.C. § 9601(23) (emphasis added).

In the case at bar, the preparation of the Health Assessment falls within the definition for "removal". Sections 9604(i)(6)(F) and (G) describe the nature and purposes of health assessments prepared under authority of § 9604(i)(6)(B). Section 9604(i)(6)(F) states that they "shall include preliminary *assessments* of the potential risk to human health posed by individual sites and facilities, based on [a number of factors]...." *Id.* (emphasis added). Section 9604(i)(6)(G) states that

the purpose of health assessments ... shall be to assist in determining whether [certain steps to protect the public health] under paragraph (11) of this subsection should be taken to reduce human exposure to hazardous substances from a facility and whether additional information on human exposure and associated health risks is needed and should be acquired by conducting epidemiological studies under paragraph (7), establishing a health surveillance program under paragraph (9), or through other means. In using the results of health assess-

ments *for determining additional actions to be taken under this section*, the Administrator of [the Agency] may consider additional information on the risks to the potentially affected population from all sources....

*Id.* (emphasis added).

■ It is clear from the relevant statutory language that the definition for "removal" encompasses the preparation of health assessments. Health assessments such as the one in this case clearly do "monitor, assess, and evaluate the release or threat of release of hazardous substances." 42 U.S.C. §§ 9601(23), 9604(i)(6)(F), (G). The statutory definition of "removal" controls, and that definition is broad. Moreover, the statutory provisions quoted herein make plain that health assessments are an integral part of a series of regulatory measures which Congress evidently desires to allow to proceed unhindered up to a certain point. *See, Dickerson v. Administrator, E.P.A.*, 834 F.2d at 977. Until the Agency or other entities take one or more of the specific "actions" listed in § 9613(h)(1)–(5) and not yet taken in this case, the introductory language of § 9613(h) plainly prevents this court acquiring subject matter jurisdiction over the Agency's acts to date. Moreover, a reading of the Health Assessment shows it to be in complete conformity with the statutory prescriptions. Finally, Plaintiffs appear to take issue with characterization of the Agency's actions as actions "selected under section 9604" for purposes of § 9613(h)'s denial of pre-enforcement review. In this regard, the court need only point out that preparation of the Health Assessment, though discretionary under § 9604(i)(6)(B), is nevertheless action "selected" under § 9604. There can be no serious argument to the contrary because all provisions relating to health assessments and their preparation are contained in § 9604. In summary, therefore, the court concludes that it lacks subject matter jurisdiction to review the Health Assessment at this time. 42 U.S.C. § 9613(h) (entitled "timing of review"); *see, State of Alabama v. U.S. E.P.A.*, 871 F.2d 1548, 1557–58 (11th Cir.), *cert. denied*, — U.S.

——, 110 S.Ct. 538, 107 L.Ed.2d 535 (1989); *Dickerson v. Administrator, E.P.A.,* 834 F.2d at 977.

Note that for Plaintiffs to state a claim for relief,

> Rule 8 of the Federal Rules of Civil Procedure merely requires " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). It is well established that a complaint is not subject to dismissal unless it appears to a certainty that no relief can be granted under any set of facts that can be proved in support of the complaint's allegations. *Id.* at 45, 78 S.Ct. at 101. Generally, the Federal Rules of Civil Procedure do not require a claimant to set forth in detail the facts upon which he bases his claim. *Id.* at 47, 78 S.Ct. at 102. Rather, cases in which the facts do not establish a true controversy are more properly disposed of through summary judgment.

*Arnold v. Board of Educ. of Escambia County,* 880 F.2d 305, 309 (11th Cir.1989). The court must construe all allegations in the complaint in the light most favorable to Plaintiffs and accept those allegations as true. *Jenkins v. McKeithen,* 395 U.S. 411, 416–17, 89 S.Ct. 1843, 1846–47, 23 L.Ed.2d 404 (1969).

Plaintiffs' constitutional claim is that the Agency's failure to provide adequate notice of the public comment period prevented Plaintiffs from participating in the comment period and ultimately deprived them of a property interest—namely, their business reputation. This claim rests on the allegation that the Agency did not inform Plaintiffs by letter of the public comment period directed to revisions of the initial Health Assessment of May 1, 1990. Plaintiffs argue that any public notice by newspapers and radio was constitutionally insufficient to put them on notice. Their alleged reputational injury arises from the publica-tion of a revised Health Assessment which did not take account of their data.

In challenging the Agency's method of notice on due process grounds rather than on statutory grounds, Plaintiffs are taking a back-door approach. Section 9604, which authorizes the preparation of health assessments and contains the various rules regarding their preparation, does not by its terms require that the Agency provide notice and hearing. *See,* 50 Fed.Reg. 5137 (Tues., Feb. 13, 1990) (codified at 42 C.F.R. § 90). The recently published regulations relating to health assessments require a public notice and comment period, but notification is adequate if made in "at least one newspaper of general distribution in the local [sic] where the site is located." 42 C.F.R. § 90.10 (Oct. 1, 1990).[3] Plaintiffs neither argue nor allege that the Agency failed to follow the regulations.

■ Because of the omnipresence of the APA, it should be noted that the notice rules of the APA in 5 U.S.C. § 553(b), applicable to agency rule-making, do not apply in this case. 5 U.S.C. § 553(b) provides, in relevant part:

> [g]eneral notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law.

*Id.* The provision goes on to prescribe the contents of the required notice. *Id.*

There is nothing in the Health Assessment, the provisions of § 9604 which create and define it, or the APA's definition of a "rule," which would implicate APA notice requirements. *See,* 5 U.S.C. § 551(4); *Industrial Safety Equip. Ass'n, Inc. v. E.P.A.,* 837 F.2d 1115, 1120 (D.C.Cir.1988). Again, the Health Assessment merely reaches tentative conclusions and makes recommendations for future public health measures. The Health Assessment does not alter existing law or official policies, does not impose or relieve regulatory burdens on Plaintiffs, does not mandate future

---

**3.** This rule essentially brings preparation of health assessments, properly denominated as "removal" action under § 9601(23), into line with the statutory notice and comment requirements of § 9617 applicable to "remedial action" as defined in § 9601(24).

action. As the provisions of § 9604 indicate, it is an advisory report without any apparent binding effect on anyone. *See,* 42 U.S.C. § 9604(i)(1), (6)(G). The statute's language expresses this clearly: "[t]he purpose of health assessments ... shall be to *assist* in determining whether actions ... should be taken ... and whether *additional information ... is needed and should be acquired.*" 42 U.S.C. § 9604(i)(6)(G) (emphasis added).

*Industrial Safety Equipment* presents an analogous set of facts. In that case, manufacturers of occupational safety equipment asked the Court to characterize as "rule making" the publication by government agencies of a guide containing recommendations and scientific information for employers to consider in fashioning asbestos protection programs. *Id.* The manufacturers argued that in explicitly not recommending certain types of respirators, the guide effectively made an agency rule. The Court rejected this argument. 837 F.2d at 1119. Noting that the guide did not, *inter alia,* change law or policy, affect the agencies' own certifications of respirators, or alter anyone's obligations or duties, the Court concluded that its advisory, hortatory nature precluded characterizing it as a "rule" for purposes of APA notice requirements. *Id.* at 1120–21.

 The notice provision of the APA being inapplicable, the court thus turns to Plaintiffs' due process claim. Procedural due process guarantees apply when a constitutionally-protected liberty or property interest is at stake. *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1316 (9th Cir. 1989). To determine whether Plaintiffs have been deprived of a constitutionally-protected liberty or property interest, the court engages in a three-pronged inquiry: 1) whether there is a liberty or property interest at stake; 2) whether the Agency's action deprived Plaintiffs of that interest; and 3) if there was a deprivation, whether Plaintiffs were accorded due process protections. *See, Industrial Safety Equip.,* 837 F.2d at 1122 (paraphrasing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)).

 To the extent to which Plaintiffs claim to have been deprived of a property interest in their business reputation, there is not a cognizable property interest at stake here. Harm to business reputation, standing alone, does not constitute either a "liberty" interest or a "property" interest for purposes of due process analysis. *Paul v. Davis,* 424 U.S. 693, 711–12, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976). *Paul v. Davis* held that harm to business reputation implicates a liberty or property interest only if there is some additional loss of either a protected right or a more tangible interest. *Id.* at 710–712, 96 S.Ct. at 1164–1166; *see, Marrero v. City of Hialeah,* 625 F.2d 499, 512–13, 515 (5th Cir. 1980) (§ 1983 case). As one court has stated,

a constitutionally recognized liberty interest depends on the existence of a special, tangible relationship between the government and the individual in specific contexts. A property interest explicitly created by independent state or federal law undoubtedly creates such a relationship and satisfies the threshold aspect of this 'reputation plus' standard.

*Doe v. U.S. Dep't of Justice,* 753 F.2d 1092, 1106 (D.C.Cir.1985).

Plaintiffs have not begun to satisfy the "reputation plus" standard. The complaint alleges no more than that "false, scientifically indefensible, and defamatory assertions made in the health assessment have caused damage to [Plaintiffs'] business reputation." Plaintiffs have neither argued nor alleged the existence of any tangible harm or the "plus" factor needed to establish a due process claim for reputational injury. *Paul v. Davis,* 424 U.S. at 710–12, 96 S.Ct. at 1164–66; *see also, Doe v. U.S. Dep't of Justice,* 753 F.2d at 1104–11 (extensive discussion of *Paul v. Davis* requirements); *E.E.O.C. v. Sears, Roebuck & Co.,* 504 F.Supp. 241, 269 (N.D.Ill.1980) (bad publicity is not a "plus" factor). Plaintiffs cannot found a due process claim on bald allegations of harm to business reputation.

 To the extent that Plaintiffs allege that their business property decreased in

value due to the tentative conclusions and recommendations contained in the Health Assessment, such allegations are insufficient to show a cognizable "deprivation", the second required showing for a due process claim.[4] The Health Assessment effectuates no "taking," for it is merely a series of tentative conclusions and recommendations for further action to protect public health in the areas surrounding the Landfill. The Health Assessment is without binding effect and is merely advisory in character. *See*, 42 U.S.C. § 9604(i)(6)–(7) (health assessments may or may not trigger an array of further regulatory steps by Agency or other officials); *Industrial Safety Equip. Ass'n, Inc. v. E.P.A.*, 837 F.2d 1115, 1122 (D.C.Cir.1988) (advisory report did not work a deprivation).

Again, the facts of *Industrial Safety Equipment* are compelling in this context. There, the Court concluded that the agencies' publication of a guide which had merely an indirect effect on the manufacturer's sales of respirators "in no way ... rendered [that property] valueless." 837 F.2d at 1122. The agencies, noted the court, "have only introduced new information into the market with a possible effect on competition." *Id.* Likewise, in this case, the publication of the Health Assessment for the purposes of scientific assessment of possible health risks has merely an indirect effect on the value of Plaintiff's Landfill. It certainly does not "take" the Landfill and render it valueless, and the Health Assessment and the Landfill can certainly

"coexist, however uneasily." *Id.* Absent a taking, or "deprivation", Plaintiffs' complaint cannot support a due process claim.

 Finally, and again as in *Industrial Safety Equipment*, "even were [the court] to view the publication as a deprivation, the [agency is] discharging [its] statutory duty." *Id.* Therefore, as the third element of the *Mathews v. Eldridge* standard for identifying the dictates of due process in a given set of circumstances would dictate, the Agency's statutorily-mandated duties to assess the dangers of potentially hazardous sites and, in the end, to protect public health, far outweigh whatever the speculative injury to property value which Plaintiffs allege. 424 U.S. at 335, 96 S.Ct. at 903; *see, Industrial Safety Equipment*, 837 F.2d at 1122; 42 U.S.C. § 9604(i)(6)(G).

Accordingly, and in light of the foregoing, Defendant's motions to dismiss for want of subject matter jurisdiction and for failure to state a claim upon which relief may be granted are GRANTED, and Plaintiffs' complaint is hereby DISMISSED. Plaintiffs' motions to add documents and to supplement their response are also GRANTED.

SO ORDERED.

---

**4.** The Court assumes, *arguendo*, that Plaintiffs have a protected property interest in the Land-

fill despite its shutdown.