HANFORD DOWNWINDERS COALITION, INC., et al., Plaintiffs,

v.

Dr. Walter DOWDLE, et al., Defendants.

COLUMBIA RIVER UNITED, et al., Plaintiffs,

v.

Dr. Walter DOWDLE, et al., Defendants.

Nos. CS–93–0245–AAM, CS–93–0290–AAM.

United States District Court, E.D. Washington.

Dec. 23, 1993.

Tom H. Foulds of Tom H. Foulds & Associated Counsel, Seattle, WA, for plaintiff Hanford Downwinders Coalition.

Nancy Malee Oreskovich, Spokane, WA, for plaintiff Columbia River United.

Robin L. Juni, U.S. Dept. of Justice, Washington, DC, for U.S.

McDONALD, District Judge.

On December 9, 1993, the Court heard oral argument on the United States' motions to dismiss the two above-entitled civil actions (CS–93–0245–AAM, Ct.Rec. 8, CS–93–0290–AAM, Ct.Rec. 4). Appearing for plaintiffs in the Hanford Downwinders Coalition action was Tom Foulds. Appearing for plaintiffs in the Columbia River United action was Nancy Oreskovich. Appearing for the United States was Robin Juni. Also before the Court for resolution without oral argument is the United States' motion for a protective order in the Columbia River United case (Ct.Rec. 11). For the reasons discussed more fully below, the Court is granting both motions to dismiss. The Court is also denying as moot the United States' motion for a protective order.

**SUMMARY:**

Before the Court are two separate actions. The first is brought by the Hanford Downwinders Coalition, its members, and individual plaintiffs. The second is brought by Columbia River United, its members, and individual plaintiffs. The Columbia River United action also is nominally brought on behalf of a class of similarly situated individuals.

While these two cases concern substantially the same facts, they interpret the facts differently and seek rather different remedies. Both are based on the Agency for Toxic Substances and Disease Registry's (ATSDR) conduct pertaining to health assessments and other health related activities at the Hanford Nuclear Reservation (Hanford). The Hanford Downwinders Coalition complaint alleges that the Agency has failed to initiate a mandatory health surveillance program for exposed persons around the Hanford facility. Plaintiffs therefore seek injunctive relief ordering the Agency to initiate such a program.

The Columbia River United complaint alleges that the Agency has failed to conduct mandatory initial health assessments at Hanford. Plaintiffs principally seek declaratory relief concerning the Agency's failure to perform non-discretionary duties. Plaintiffs also seek an accounting of all expenditures by the Agency for Hanford health related activities. Finally, plaintiffs seek an injunction against any further spending by the ATSDR until the declaratory relief is granted and the accounting is provided.

Defendants, Dr. Walter Dowdle in his official capacity as Administrator of the Agency, and the Agency itself, move the Court to dismiss both cases. Defendants' principal argument is that the Court lacks subject matter jurisdiction over the claims because they constitute challenges to removal actions selected under Superfund. Defendants fur-

ther argue that, even if the Court does find that it has jurisdiction, it should still dismiss for other jurisdictional reasons, including plaintiffs' failure to identify any breaches of non-discretionary duties, and failure to give the required notice of intent to sue. For the reasons discussed more fully below, the Court finds that, under Superfund's timing of review provision, the Court does not have subject matter jurisdiction to hear either complaint. The Court is therefore dismissing both complaints without prejudice.

**FACTS:**

**1. Activities at Hanford**

In June, 1988, the Environmental Protection Agency (EPA) proposed listing four areas at Hanford on the National Priorities List (NPL). On October 4, 1989, EPA formally listed the four areas on the NPL. 54 Fed.Reg. 41,015–10 (1989). In May, 1989, in anticipation of the listing of areas at Hanford, the EPA, the Department of Energy, and the State of Washington entered into a Federal Facility Agreement and Consent Order (FFA). *Heart of America Northwest v. Westinghouse Hanford Co.*, 820 F.Supp. 1265, 1269 (E.D.Wash.1993).

The Agreement also included an Action Plan for implementation of the Agreement. *Id.* As amended through August, 1992, the Action Plan includes a section outlining the activities of the ATSDR at Hanford. United States' Memorandum in Support of Motion to Dismiss [Hanford Downwinders Coalition] First Amended Complaint (Ct.Rec. 10) at Ex. A, p. 7–24. The Action Plan acknowledges that the ATSDR is required to conduct a health assessment within one year of Hanford's proposed listing on the NPL. The Action Plan continues as follows:

> The ATSDR health assessment is the result of the evaluation of data and information on the release of hazardous substances into the environment. Its purpose is to assess any current or future impacts on public health, to develop health advisories and other health recommendations, and to identify studies or actions needed to evaluate and mitigate or prevent adverse human health effects.
>
> The ATSDR will prepare a preliminary health assessment for each of the four

Hanford NPL areas (the 100, 200, 300, and 1100 Areas). Since the RI Phase I reports for these areas will not be available within one year following the proposal of Hanford to the NPL, these preliminary health assessments will be based on the best available information.

*Id.*

In October, 1989, the ATSDR completed four draft preliminary health assessments, one for each of the listed areas at Hanford. United States' Reply Memorandum in Support of Motion to Dismiss [Columbia River United's] Complaint (Ct.Rec. 14) at Ex. A–D. It is not clear from the record whether these draft preliminary assessments were ever released to the public or published. However, in correspondence from the ATSDR that is attached to the Columbia River United complaint, the ATSDR referenced these draft assessments and stated as follows:

> In preparing preliminary and/or full health assessments for this site, ATSDR intends to use the initial draft preliminary assessments for informational purposes only. The Agency does not consider these existing draft preliminary health assessments as an official evaluation of the four Hanford NPL sites (they have not been finalized) nor as a final evaluation of the health effects at Hanford.

[Columbia River United] Complaint (Ct.Rec. 1) at Ex. A, letter of August 16, 1991 from Robert Williams, Director, Division of Health Assessment and Consultation, ATSDR, to Peter Nordberg.

According to the both complaints, the Center for Disease Control, "a sister agency" of the ATSDR, is undertaking a study of the radiation doses received by members of the Hanford community from past releases at the facility. *See, e.g.,* [Hanford Downwinders Coalition] First Amended Complaint (Ct.Rec. 3) at 7. The first phase of that study, the Hanford Environmental Dose Reconstruction Study (HEDR) has apparently been completed and a final report thereon was issued in August, 1991. Aside from these references in the complaints to the HEDR study, nothing in the record reflects who is responsible

for undertaking the study, what its scope is, or what future research is planned.

Further, according to draft documents attached to the Hanford Downwinders' complaint, in April, 1993, the ATSDR proposed four additional Hanford health related studies. Ct.Rec. 3 at Ex. A. From the excerpt of the draft document provided, it is unclear to whom the ATSDR proposed these studies. Nor does the record reflect whether these studies have been approved. Nevertheless, the proposed studies are intended to collect needed health information including the following: "an overview of available health statistics, a follow up of persons exposed to the major releases, and a specialized follow up on children previously monitored for whole body radiation." *Id.* at 3.

Finally, in September, 1993, the ATSDR published an Announcement of Priorities for Conducting Public Health Assessments at Department of Defense and Department of Energy Facilities. 58 Fed.Reg. 49,517 (1993). The priority ranking system was based on the acknowledgement that "Current resources at ATSDR are inadequate to presently initiate public health assessments at each of the Federal facilities listed on the NPL." *Id.* at 49,517. Accordingly, ATSDR developed the site ranking scheme as a planning tool to identify the sites that "pose the greatest relative risk to public health." *Id.* The Agency states, however, that "The interim Site Ranking Scheme is not intended to take the place of a public health assessment." *Id.* Of the 115 Department of Defense and Department of Energy sites ranked by the ATSDR, three of the four sites at Hanford are at the top of the list. That is, they are the sites identified by ATSDR as posing the greatest risk to public health.

While the record is incomplete at this time, the Court can reasonably draw the following conclusions from what has been presented. ATSDR considers Hanford a top priority for public health assessments. ATSDR drafted preliminary health assessments for Hanford in October, 1989, but has not yet finalized those assessments. Further, ATSDR is aware of and possibly involved with ongoing health related work at Hanford including the HEDR. Finally, ATSDR is involved with

designing and proposing additional health related studies of the effects of past emissions at the Hanford facility.

### 2. Statutory provisions governing ATSDR health assessments, registries, epidemiological studies, and health surveillance

Section 104 of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA or Superfund) created the ATSDR. 42 U.S.C. § 9604(i)(1). The Act specifies several responsibilities for the Agency, including the health related studies at Superfund sites that are at issue in the cases at bar. All of the health related responsibilities described below apply to federal facilities such as Hanford to the same extent that they apply to other facilities. *Id.* at (i)(17).

Within one year of a site being proposed for listing on the NPL, the Administrator of the ATSDR (Administrator) shall complete a health assessment. *Id.* at (i)(6)(A). Health assessments are defined as including "preliminary assessments of the potential risk to human health posed by individual sites and facilities." *Id.* at (i)(6)(F). In determining the priority for conducting health assessments, the Administrator must "give priority to those facilities at which there is documented evidence of the release of hazardous substances." *Id.* at (i)(6)(C). In determining priorities, the Administrator must also consider the NPL schedules of the facilities and the needs of the EPA and other agencies pursuant to the remedial investigation and feasibility study schedules. When the Administrator undertakes a health assessment at a site actually listed on the NPL, the Administrator "shall complete such assessment promptly, and to the maximum extent practicable, before the completion of the remedial investigation and feasibility study." *Id.*

The purpose of ATSDR's health assessments is to assist the President in determining whether to take additional steps to reduce human exposure to hazardous substances and to mitigate significant risk to human health. *Id.* at (i)(6)(G). Examples of the additional steps that may be taken in-

clude providing alternative water supplies and relocating individuals. *Id.* at (i)(11). The purpose of health assessments is also to assist in determining whether additional risk and exposure information is needed and should be obtained through epidemiological studies, establishment of a registry of exposed persons, or establishment of a health surveillance program. *Id.* at (i)(6)(G).

Once a health assessment is completed, the Administrator must provide the results to the EPA and to affected states. *Id.* at (i)(6)(H). The Administrator must also provide the EPA and affected states with any recommendations for further action.

The Act also authorizes the Administrator to conduct studies in addition to health assessments. The authorization for these additional studies is contained in sections (i)(7–9). Because of the significant role that these sections play in the Hanford Downwinders' complaint, they are quoted here in their entirety.

(7)(A) Whenever in the judgment of the Administrator of ATSDR it is appropriate on the basis of the results of a health assessment, the Administrator of ATSDR shall conduct a pilot study of health effects for selected groups of exposed individuals in order to determine the desirability of conducting full scale epidemiological or other health studies of the entire exposed population.

(B) Whenever in the judgment of the Administrator of ATSDR it is appropriate on the basis of the results of such pilot study or other study or health assessment, the Administrator of ATSDR shall conduct such full scale epidemiological or other health studies as may be necessary to determine the health effects on the population exposed to hazardous substances from a release or threatened release. If a significant excess of disease in a population is identified, the letter of transmittal of such study shall include an assessment of other risk factors, other than a release, that may, in the judgment of the peer review group, be associated with such disease, if such risk factors were not taken into account in the design or conduct of the study.

(8) In any case in which the results of a health assessment indicate a potential significant risk to human health, the Administrator of ATSDR shall consider whether the establishment of a registry of exposed persons would contribute to accomplishing the purposes of this subsection, taking into account circumstances bearing on the usefulness of such a registry, including the seriousness or unique character of identified diseases or the likelihood of population migration from the affected area.

(9) Where the Administrator of ATSDR has determined that there is a significant increased risk of adverse health effects in humans from exposure to hazardous substances based on the results of a health assessment conducted under paragraph (6), an epidemiologic study conducted under paragraph (7), or an exposure registry that has been established under paragraph (8), and the Administrator of ATSDR has determined that such exposure is the result of a release from a facility, the Administrator of ATSDR shall initiate a health surveillance program for such population. This program shall include but not be limited to—

(A) periodic medical testing where appropriate of population subgroups to screen for diseases for which the population or subgroup is at significant increased risk; and

(B) a mechanism to refer for treatment those individuals within such population who are screened positive for such diseases.

42 U.S.C. § 9604(i).

### 3. Summary of plaintiffs' claims

Because the inferences drawn from the underlying facts and the relief sought in the two complaints are substantially different, they are discussed separately below.

### A. Hanford Downwinders Coalition complaint

The Hanford Downwinders note the requirement that the ATSDR complete a health assessment within one year of proposal for listing on the NPL. For Hanford, this means that the health assessment should have been completed by June, 1989. Plain-

tiffs acknowledge that in October, 1989, the ATSDR prepared draft preliminary health assessments, which allegedly primarily concerned on-site exposure risks.

Plaintiffs contend that the decision to conduct epidemiological studies and to establish a registry of exposed persons must be based on a health assessment. Plaintiffs then argue that, because the authority to conduct these additional studies is premised on the results of a health assessment, the fact that the ATSDR has proposed such studies compels the conclusion that a health assessment has been completed. Plaintiffs then allege that, because the HEDR study is the only substantial study of off-site exposure and risk, and because of the close relation between the ATSDR and the CDC, one of the authors of the HEDR study, the ATSDR must have adopted the HEDR results as the Agency's own health assessment.

Plaintiffs further allege that the HEDR study establishes a significant increased risk of adverse health effects in humans from exposure to Hanford emissions. Accordingly, plaintiffs argue that under section 104(i)(9), the Administrator is under a duty to initiate a medical surveillance program for persons exposed to Hanford emissions. Plaintiffs therefore pray for the Court to require the ATSDR to establish a health surveillance program.

### B. Columbia River United complaint

The Columbia River United plaintiffs focus their attention on the alleged failure of the ATSDR to complete a health assessment for the Hanford NPL sites. They note that, despite Hanford's high priority for health assessments, no final preliminary health assessments have been completed to date. They also note that Congress has authorized substantial funds for conducting health related studies at NPL sites. Finally, plaintiffs

note that the ATSDR has recently conducted two public meetings "with large expenses attached thereto." Ct.Rec. 1 at 15.

Plaintiffs allege that ATSDR has failed to conduct a health assessment, failed to prioritize Hanford for health related activities, and failed to take the steps necessary to obtain the funds authorized by Congress for undertaking these activities. Plaintiffs therefore seek declaratory relief as to each of these alleged failures of duty. They also seek clarification regarding the appropriate means for accessing authorized funds, and an accounting of any funds actually provided during 1990–93, specifically those funds expended for community action meetings. Finally, plaintiffs seek an injunction against any further spending by the ATSDR at Hanford until plaintiffs obtain the declaratory relief, clarification, and accounting they seek.

### DISCUSSION:

### 1. Subject matter jurisdiction generally

As noted above, the government's first argument in support of its motions to dismiss is that the Court lacks subject matter jurisdiction over all of the claims. This argument is based upon the CERCLA timing of review provision which states that federal courts do not have jurisdiction to hear suits that challenge removal or remedial actions at NPL sites until those actions are completed. 42 U.S.C. § 9613(h).

The party asserting that jurisdiction exists bears the burden of so proving in a Rule 12(b)(1) motion[1]. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1350 (1990). The Court's role in reviewing a Rule 12(b)(1) motion depends on the state of the record and the nature of the challenge to jurisdiction. Where jurisdictional facts are disputed and resolution of those facts is separable from resolution of the merits of the case, the

1. Columbia River United's citation to *Reber v. United States,* 951 F.2d 961, 965 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1675, 118 L.Ed.2d 393 (1992), for the proposition that the burden is instead on the government in this case because plaintiffs can not be required to prove a negative, i.e. that their claims do not constitute challenges to remedial actions, is meritless. The issue in *Reber* was whether or not plaintiffs had met their burden at trial to prove that the dam-

ages had been proximately caused by the government. The court there merely said that because plaintiffs had the burden to prove proximate cause, the government was under no obligation to prove that it had not caused the damages. This statement does not undermine the fundamental rule that the party asserting jurisdiction has the burden of establishing it. *Thompson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1941).

Court may consider evidence presented on the jurisdictional issue, and, if necessary, resolve disputes as to the jurisdictional facts. *Thornhill Publishing Co. v. General Tel. & Elec.*, 594 F.2d 730, 733 (9th Cir.1979). No presumptions as to truthfulness apply to allegations of jurisdictional facts. *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing *Thornhill* ).

■ On the other hand, when the challenge to jurisdiction is based solely upon the sufficiency of the complaint, the Court must accept the allegations in the complaint as true and must construe them favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In the case at bar, the government's challenges to subject matter jurisdiction under section 113(h) are based solely on the allegations in the complaint.

■ When jurisdictional challenges are based solely upon the complaint, the Court's task in resolving a Rule 12(b)(1) motion is a relatively limited one. The issue is not whether plaintiff will ultimately succeed on the merits, but rather whether it is entitled to offer further evidence in support of its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The rule to be followed in making this determination is that the complaint should not be dismissed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.' " *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

**2. Citizen suits and section 113(h)**

Plaintiffs in both of the actions before the Court bring their suits pursuant to CERCLA's citizen suit provision. That provision reads as follows:

**(a) Authority to bring civil suits**

Except as provided in ... section 9613(h) of this title (relating to timing of judicial review), any person may commence a civil action on his own behalf—

. . . . .

(2) against the President or any other officer of the United States (including ... the Administrator of the ATSDR) where there is alleged a failure of the President or of such other officer to perform any act or duty under this chapter ... which is not discretionary with the President or such other officer.

42 U.S.C. § 9659(a). Both plaintiffs groups allege the failure of the Administrator of the ATSDR to perform non-discretionary duties.

As the citizen suit provision expressly states, such suits are subject to the provisions of section 113(h) concerning timing of review. That section reads as follows:

**(h) Timing of review**

No Federal court shall have jurisdiction under Federal law ... to review any challenges to removal or remedial action selected under section 9604 of this title ... in any action except one of the following:

. . . . .

(4) An action under section 9659 of this title (relating to citizen suits) alleging that the removal or remedial action taken under section 9604 of this title ... was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.

42 U.S.C. § 9613.

Defendants argue that both actions are barred by section 113(h) as they are challenges to removal actions selected under section 9604. The Hanford Downwinders Coalition raises several objections to defendants' motion to dismiss. The Hanford Downwinders Coalition first argues that its suit does not "challenge" a removal action because it does not seek to enjoin any ongoing activities but merely to enforce the obligation to take further actions. Second, it argues that, even if its action is a challenge, it is still permissible because the health assessment is a distinct stage of the removal action that has been completed or taken, therefore allowing suit under section 113(h)(4). Third, it argues that the fundamental purpose behind section 113(h) is to prevent delay in clean up actions and that accepting defendants' position would have the opposite effect. Finally, it argues

that the section 113(h) jurisdictional bar should be read to apply only to actions concerning monetary losses, and not to actions concerning potential irreparable injuries to human health.

The Columbia River United plaintiffs make several similar arguments. First, they argue that theirs is not a challenge to a removal action because they do not prescribe any specific course of action but rather only seek declaratory relief. Second, they argue that section 113(h) should not be read to bar citizen suits challenging agency inaction as this would eviscerate the citizen suit provision and allow an agency to evade review altogether by simply refusing to ever take action.

### A. Removal actions selected under section 9604

Plaintiffs do not contest that the ATSDR's activities at Hanford are removal actions selected under section 9604. In fact, the Hanford Downwinders Coalition concedes that they are. *See* [Hanford Downwinders Coalition] Memorandum in Opposition to Motion to Dismiss (Ct.Rec. 15) at 7.

■ Despite the fact that plaintiffs do not contest the definition of ATSDR's activities at Hanford, the Court must address this issue as it is critical to determining whether or not section 113(h) applies. Defendants first argue that health assessments fall within CERCLA's broad definition of removal actions. 42 U.S.C. § 9601(23) (" 'remove' or 'removal' means ... such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, ... or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare"). Given the purpose of health assessments as described above, this is an imminently reasonable reading of the statute. *See* 42 U.S.C. § 9604(i)(6)(F), (G).

Further, defendants argue that the only case to date to squarely address the issue has found that ATSDR health assessments are removal actions within the meaning of CERCLA and specifically within the meaning of section 113(h)[2]. *Environmental Waste Control, Inc. v. Agency for Toxic Substances and Disease Registry (EWC )*, 763 F.Supp. 1576, 1580 (N.D.Ga.1991) ("It is clear from the relevant statutory language that the definition for 'removal' encompasses the preparation of health assessments."). Finally, given that all of the ATSDR's responsibilities at issue here are outlined in section 9604 of the statute, there can be little doubt that the Agency's actions are selected under section 9604.

Accordingly, the Court finds that the ATSDR's health related activities at Hanford are removal actions selected under section 9604. What the Court must then confront is whether or not the actions are challenges to these removal actions and whether, even if they are challenges, they are nonetheless permissible under section 113(h) for other reasons.

### B. Challenges to removal actions

Plaintiffs in several cases have argued that their claims were not in fact challenges to a response action, but were instead collateral or supplementary to the Superfund response action. This Court considered such an argument in *In re Hanford Nuclear Reservation Litigation*, 780 F.Supp. 1551 (E.D.Wash. 1991). The Court rejected the argument that a claim for "abatement and remediation" of the risk posed by the underground tanks was collateral to the tank cleanup efforts outlined in the FFA. *In re Hanford*, 780 F.Supp. at 1559. The Court reasoned that, in order to provide the relief which plaintiffs sought, the Court could not avoid interfering with the cleanup efforts set out in the FFA. Accordingly, plaintiffs' characterization of the claim notwithstanding, it was, in a pragmatic

**2.** A recent 10th Circuit case holding that private medical monitoring costs are not recoverable response costs does not substantially undercut *EWC.* The case is *Daigle v. Shell Oil*, 972 F.2d 1527 (10th Cir.1992). Plaintiffs there sought to recover the costs of private medical monitoring under section 107(a), the liability section of the Act. 42 U.S.C. § 9607(a). The court held that

CERCLA did not create a private right of action to recover these expenditures. The court's holding did not, however, address whether the ATSDR's health-related activities, as opposed to private health related activities, were in fact removal actions within the meaning of section 113(h).

sense, clearly a challenge to the FFA's clean-up plan, and was therefore barred by section 113(h).

The Court also rejected claims for the establishment of medical monitoring and surveillance programs distinct from those within the exclusive province of the ATSDR. *Id.* at 1561–65. The Court specifically found that such claims would constitute a challenge to the health assessment activities of the ATSDR that are called for under the FFA and are underway at Hanford.

Plaintiffs in other cases have argued that a suit seeking enforcement of a statute other than CERCLA does not constitute a challenge to ongoing CERCLA response actions. In *Reynolds v. Lujan,* 785 F.Supp. 152 (D.N.M.1992), plaintiffs brought suit to enforce provisions of RCRA at a federally owned facility that was listed on the CERCLA National Priorities List. Plaintiffs sought an order compelling comprehensive cleanup of the site. The court held that section 113(h) prevented the challenge, even though it was not based on CERCLA, because the court could only grant the relief plaintiffs sought by altering the ongoing response actions. The court applied a pragmatic approach when determining what constitutes a challenge to a CERCLA response action under section 113(h).

Similarly, in *Schalk v. Reilly,* 900 F.2d 1091 (7th Cir.), *cert. denied,* 498 U.S. 981, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990), plaintiffs argued that their claim was not a challenge to the consent decree governing the cleanup, but rather sought to ensure that certain procedural requirements were complied with. As in the other cases concerning the meaning of "challenge," the court interpreted the term pragmatically and found that a challenge to the procedure used for selecting a remedy would necessarily impact implementation of the remedy. *Id.* at 1097. Again, the court was concerned with the practical impact of judicial intervention on the implementation of cleanup.

In all of these cases, and others like them, the inquiry for the court is whether the court's intervention would impact implementation of a response action. This inquiry is a pragmatic one that compares the relief sought by the plaintiffs with the response plans being pursued by the responsible parties.

As this Court found in *In re Hanford,* ATSDR's health related programs at Hanford are part of the response action selected for Hanford through the FFA. Further, as this Court held in *Heart of America Northwest v. Westinghouse Hanford Co.,* 820 F.Supp. 1265 (E.D.Wash.1993), the FFA is the integrated CERCLA response plan for Hanford. The inquiry then is whether, in a pragmatic sense, the relief plaintiffs seek would interfere with the ATSDR's conduct of its health related activities at Hanford.

■ Despite its protestations to the contrary, Columbia River United's prayer for an injunction against any further spending by the ATSDR at Hanford would unquestionably interfere with the Agency's response activities and is therefore a challenge to the removal action. As to the remainder of Columbia River United's prayers for relief, it is difficult to understand how a declaration by the Court that the Agency has failed its statutory duties and an order to prepare budget documents satisfactory to plaintiffs does not interfere in the most basic sense with the Agency's activities. Accordingly, the Court finds that all of Columbia River United's claims challenge the ATSDR's health related removal actions at Hanford.

■ As to the Hanford Downwinders Coalition, the relief it seeks, an order compelling establishment of a health surveillance program, would, if granted, impose substantial new responsibilities on the Agency[3].

---

**3.** Plaintiffs assertion that this case is similar to *Chemical Waste Management, Inc. v. United States Environmental Protection Agency,* 673 F.Supp. 1043 (D.Kan.1987) is without merit. *Chemical Waste Management* concerned the EPA's procedures in regulating a waste disposal facility that received wastes from several Superfund sites. The Chemical Waste Management facility, however, was not itself a Superfund site. Accordingly, the court found that section 113 was facially inapplicable as the case did not involve a removal action under section 9604 or an order under section 9606. The court's discussion of whether or not the action would hinder a removal action is therefore inapplicable to this action which directly addresses removal actions

These new responsibilities would in turn require the commitment of funds and personnel. In this era of national fiscal austerity, it strains credulity to contend that this would not, in a pragmatic sense, impact the performance of the Agency's other activities at Hanford. Clearly then, the Hanford Downwinders' action constitutes a challenge to the ATSDR's conduct of removal actions. Accordingly, because this Court could not grant the relief requested by either group of plaintiffs without interfering with the conduct of ongoing removal actions, the Court finds that both actions constitute challenges to removal actions within the meaning of section 113(h).

The issue remaining for the Court then is whether, despite the fact that these actions are challenges to removal actions selected under section 9604, the Court still has jurisdiction. The arguments raised by the parties on this point speak to whether or not the health assessment is a distinct stage of the removal action that has been taken; the general delay-prevention purpose behind section 113(h); and whether or not section 113(h) should be read as permitting challenges implicating health concerns rather than simply monetary concerns.

## C. Distinct stages of removal actions

The Hanford Downwinders Coalition argues that, even if its suit challenges a removal action, it nevertheless survives section 113(h) because the action has been taken. Section 113(h) only bars claims where the removal or remedial action has not yet been taken or completed. *See* 42 U.S.C. § 9613(h)(4). Plaintiffs argue that their claim challenges the health assessment which they contend is completed. They argue that the health assessment is a separate and distinct stage of health related activities from the further health related activities described in section 9604(i)(7)–(9).

According to the legislative history cited by plaintiffs, section 113(h) is intended to allow suits challenging a distinct and separate stage of a response action once that action has been completed. Ct.Rec. 15 at 5 (quoting Joint Explanatory Statement of the Committee of Conference, House Conference

Report 99–962, at p. 224, reprinted in 1986 *U.S.C.C.A.N.* 2835, 3317). The examples of distinct and separate stages provided in the legislative history include a surface cleanup where the subsurface cleanup has yet to be completed, or the cleanup of one area at a complex multi-area site. *Id.* At Hanford it would therefore be reasonable to conclude that a challenge to the completed cleanup of, say, the 200 area, could be challenged even if the cleanup of other areas has not yet been completed.

Plaintiffs' argument is superficially appealing. Under section 9604, health assessments are certainly a procedurally distinct phase from the other health related activities of the ATSDR. The problem is that the health assessments are not really separable from the whole of the removal action at issue, which is the ongoing effort to determine human health exposure and risk caused by the facility. Health assessments are instead integral to developing the appropriate suite of removal actions to be taken by the Agency.

In this sense, health assessments are functionally akin to remedial investigations and feasibility studies (RI/FS). RI/FS work at a site is also procedurally distinct from the next stage of a cleanup, selection of a remedial plan, just as selection of the plan is distinct from implementation of the plan.

Courts have, however, unanimously denied efforts to challenge each of these procedurally distinct stages of cleanup at Superfund sites because they are not functionally separable in the way that the examples provided by the legislative history are separable. *See Barmet Aluminum Corp. v. Reilly,* 927 F.2d 289 (6th Cir.1991) (section 113(h) bars review of EPA proposal to list site on NPL); *Cooper Industries, Inc. v. United States E.P.A.,* 775 F.Supp. 1027 (W.D.Mich.1991) (section 113(h) bars review of development of remedial plan); *Eureka v. United States,* 770 F.Supp. 500 (E.D.Mo.1991) (section 113(h) bars review of selection of remedial plan); *Schalk v. Reilly,* 900 F.2d 1091 (7th Cir.1990) (section 113(h) bars review of consent decree embodying remedial plan). Litigating each procedurally distinct phase would necessarily entail the kind of piecemeal litigation that

selected under section 9604 at a specific Super-      fund site.

section 113(h) is intended to prevent. *See Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1390 (5th Cir.1989) (one objective of Superfund amendments that included addition of section 113(h) is to avoid piecemeal litigation).

The procedurally distinct provisions of section 9604 relating to the ATSDR's health related activities are functionally equivalent to other Superfund cleanup activities that occur in procedurally distinct stages yet constitute parts of an inseparable whole. Accordingly, allowing judicial review in this case would do as much violence to the language of, and policies behind, section 113(h) as would allowing review under the other situations noted above. Allowing judicial review of each stage of the ATSDR's activities, or even allowing review of just the health assessment, would interfere with the conduct of the removal action as a whole. That is what section 113(h) is meant to preclude. The Court therefore finds that completion of a health assessment is not a distinct and separate stage of the removal action. Accordingly, under section 113(h)(4), the removal action as a whole has not yet been completed and this Court lacks jurisdiction over the challenge.

### D. Policies underlying section 113(h) and citizen suits

Both plaintiffs groups argue that the purpose behind section 113(h) is to prevent litigation delays of cleanup actions so that the cleanups can progress as quickly as possible. Both groups further argue that the ATSDR's actions and position in this lawsuit do not further this purpose. The Hanford Downwinders Coalition argues that, despite what plaintiffs believe is compelling evidence for immediate establishment of a health surveillance program, the ATSDR's proposed studies indicate that it will be many years before the Agency establishes such a program. The Columbia River United plaintiffs argue that the ATSDR's legal position in this matter— that the Court may not review Agency action until it has been taken—allows the Agency to indefinitely avoid judicial review by never taking action.

Like many of the plaintiffs groups' arguments in section 113(h) cases, these arguments are compelling on their face. Suits, like the Hanford Downwinders Coalition's, that seek to compel a speedier response action do seem to comport with the policy of not allowing delay of cleanups. The problem is that the litigation alone, by interfering with the Agency's chosen course of action, would, as a practical matter, impact the implementation of the chosen response action. This is why courts have routinely rejected claims that are said to be collateral or supplementary to the chosen response action. *See, e.g., In re Hanford Nuclear Reservation Litigation*, 780 F.Supp. 1551, 1559 (E.D.Wash.1991) (rejecting plaintiffs' argument that prayer for relief was collateral to CERCLA response action); *Redland Soccer Club v. Department of the Army*, 801 F.Supp. 1432, 1435 (M.D.Pa.1992) (rejecting plaintiffs' argument that claims were supplementary to CERCLA response action). CERCLA gives the agencies charged with its implementation substantial discretion to select not only the substance of their response actions but also the timing of those actions. Section 113(h)'s broad language makes clear the very limited role of the courts in reviewing this discretion.

Columbia River United also makes a compelling argument. It argues that the citizen suit provision provides citizens with a cause of action against the ATSDR for failure to perform non-discretionary duties. *See* 42 U.S.C. § 9659(a)(2). It further argues that performance of a health assessment within one year is a non-discretionary duty and that the ATSDR has not completed its health assessments within the prescribed time. Finally, it argues that the ATSDR's insistence that there can be no judicial review until all health related activities are completed means that the ATSDR can indefinitely avoid judicial review of its failure to prepare a health assessment by never completing one. Based on this line of reasoning, plaintiffs argue that section 113(h) should be read to prevent only suits for agency misfeasance, not suits for agency nonfeasance.

These are strong arguments. The problem is that they run head long into the

language of both the citizen suit provision and section 113(h). While Congress did provide citizens with a cause of action for failure to perform non-discretionary duties, Congress also specifically conditioned that cause of action on compliance with section 113(h). *See* 42 U.S.C. § 9659(a) ("Except as provided . . . in section 9613(h) of this title (relating to timing of judicial review), any person may commence a civil action. . . ."). Further, Congress specifically addressed the citizen suit provision in section 113(h)(4) and stated that no cause of action lies under the citizen suit provision until the removal action is taken. *See* 42 U.S.C. § 9613(h)(4).

██ This explicit cross referencing of the two provisions compels the Court to read them together. Accordingly, the Court cannot find that section 9659's policy of allowing judicial review of agency failure to perform non-discretionary duties prevails over section 113(h)'s jurisdictional bar. Therefore, until the ATSDR's health related removal actions are complete, this Court is without jurisdiction to review the Agency's failure to perform non-discretionary duties. As anomalous as this conclusion may be, it is what Congress has compelled. It is also consistent the finding of other courts that section 113(h) may preclude review altogether. *See Boarhead Corp. v. Erickson,* 923 F.2d 1011, 1023 (1991). The remedy, however, lies with Congress, not with this Court. *Id.*

### E. Section 113(h) and health versus monetary harm

Finally, the Hanford Downwinders Coalition argues that, even if their suit is a challenge to a removal action, it should be permitted as the legislative history suggests that health related challenges should be allowed even though challenges based on monetary harm are barred. Their contention is that section 113(h) should only be read to bar challenges based on alleged monetary or property damages. This position finds support in dicta from one case, *Cabot Corp. v. United States EPA,* 677 F.Supp. 823 (E.D.Pa.1988), and in academic commentary, see Michael P. Healy, *Judicial Review and CERCLA Response Actions: Interpretive Strategies in the Face of Plain Meaning,* 17 Harv.Env.L.Rev. 1 (1993). Unfortunately, the position does not find support in the plain language of the statute or in the many cases that have interpreted the statute.

As discussed above, because section 113(h)(4) specifically addresses citizen suits, the plain terms of the statute indicate that Congress was aware of citizen suits when it drafted section 113(h). Further, because the citizen suit provision specifically references section 113(h), the plain terms of the statute indicate that Congress was aware of the timing of review issue when it provided for citizen suits. Despite this clear awareness that citizen suits were subject to the timing of review restrictions of section 113(h), Congress provided no exception to section 113(h) for health related claims. As the principal purpose of citizen suits is arguably to allow an avenue for protection of human health, the absence of such an exception in section 113(h) is significant. The Court must therefore be cautious in considering legislative history suggesting the existence of such an exception.

Many section 113(h) cases have confronted claims that were based on threats to human health. All have held that these claims are barred unless and until the response action is completed. *See, e.g., Arkansas Peace Center v. Arkansas Dept. of Pollution Control,* 999 F.2d 1212 (8th Cir.1993) (citizen suit to enjoin incineration of dioxin contaminated wastes was barred by section 113(h)); *Schalk v. Reilly,* 900 F.2d 1091 (7th Cir.1990) (citizen suit challenging CERCLA consent decree that called for incineration of PCBs was barred by section 113(h)); *Alabama v. United States EPA,* 871 F.2d 1548 (11th Cir.) (suit challenging remedial plan that called for shipment of contaminated soil to waste disposal facility in Alabama was barred by section 113(h)), *cert. denied,* 493 U.S. 991, 110 S.Ct. 538, 107 L.Ed.2d 535 (1989); *Neighborhood Toxic Cleanup Emergency v. Reilly,* 716 F.Supp. 828 (D.N.J.1989) (citizen suit to enjoin cleanup plan thought to pose public health risks was barred by section 113(h)). Furthermore, at least two courts have specifically addressed and rejected the *Cabot Corp.* dicta (that, despite section 113(h), health and environmental hazards may be addressed

though preimplementation review) upon which plaintiffs here rely. *See, Neighborhood Toxic Cleanup Emergency,* 716 F.Supp. at 832–33; *United States v. Princeton Gamma–Tech, Inc.,* 817 F.Supp. 488, 495 (D.N.J. 1993).

Harsh as this result may be, it is compelled by the severely restrictive language Congress has chosen to limit the jurisdiction of the federal courts. Remedy for this harm must be sought with Congress, who should by now be well aware of how the courts have unanimously interpreted section 113(h). Accordingly, the Court finds that section 113(h) does not permit the Court to exercise jurisdiction over health related claims unless they otherwise fall within the enumerated exceptions. Because, as discussed above, plaintiffs' claims do not fall within section 113(h)'s exceptions, the Court is without jurisdiction to hear them.

### CONCLUSIONS:

As this Court has noted before, the equities of the situation at Hanford make section 113(h)'s harsh jurisdictional limitations particularly troubling. The ATSDR has itself identified three of Hanford's four NPL sites as being the sites that pose the greatest public health risk in the country. There could not be a more clear mandate for immediate and substantial response on the part of the ATSDR. Given the Agency's own assessment of the seriousness of the situation at Hanford, failure to provide such response in a timely fashion would be reprehensible.

Nevertheless, Congress, through enacting section 113(h), has determined that the courts are not the appropriate forum for directing response actions at Superfund sites. Given the phenomenal complexity of the task at Hanford, and the limited resources of this Court, that determination is not entirely unreasonable one. Accordingly, unless Congress amends CERCLA, this Court can not substitute its judgment for that of Congress and may not review the agency actions underway at Hanford.

For all of the above reasons, the Court finds that, assuming the truth of all factual allegations in the complaints, plaintiffs could prove no set of facts that would establish subject matter jurisdiction and entitle them to relief. Having found that it does not have subject matter jurisdiction over the complaints, the Court must grant the defendants' motions to dismiss both cases. Accordingly, **IT IS HEREBY ORDERED** that the United States' Motion to Dismiss [the Hanford Downwinders Coalition's] First Amended Complaint (Ct.Rec. 8) and the United States' Motion to Dismiss [Columbia River United's] Complaint (Ct.Rec. 4) are **GRANTED. IT IS FURTHER ORDERED** that both actions are **DISMISSED WITHOUT PREJUDICE.**

Having dismissed both actions, the United States' pending Motion for a Protective Order in the Columbia River United action (Ct.Rec. 11) is moot. Accordingly, **IT IS HEREBY ORDERED** that the motion for a protective order is **DENIED AS MOOT.**

**IT IS SO ORDERED.** The Clerk is directed to enter this order and forward copies to counsel. The Clerk is further directed to enter judgment accordingly in both actions.