**Carl J. COOPER, Plaintiff,**

v.

**SECRETARY OF the AIR FORCE, et al., Defendants.**

Civ. A. No. 89–0927.

United States District Court, District of Columbia.

July 26, 1990.

Mark Anthony Venuti, Washington, D.C., for plaintiff.

John Martin, Washington, D.C., for defendants.

## MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

Plaintiff Carl J. Cooper ("Cooper"), on behalf of himself and others similarly situated, brings this action seeking declaratory and injunctive relief relating to the drug urinalysis testing procedures utilized by the United States Air Force from April 1982 through November 1983 that resulted in the wrongful and premature discharge from the Air Force of himself and similarly situated Air Force veterans. This case now comes before the Court on defendants' *Motion for a Protective Order.* Pursuant to Fed.R.Civ.P. 26(c), defendants move the Court for entry of a protective order preventing Cooper from obtaining discovery of information regarding · some of the Air Force veterans Cooper seeks to represent. Specifically, defendants seek a protective order limiting discovery of matters regarding alleged class members to those former military members who have exhausted their intraservice administrative remedies. After careful consideration of the motion, the opposition thereto, and the entire record in this case, the Court concludes that the motion should be granted in part and denied in part.

### I.

Cooper entered active duty with the Air Force on April 14, 1980, for a period of four years, in the pay grade of E–3 (Airman First Class). On December 1, 1981, he was appointed to the grade of E–4 (Senior Airman). On February 14, 1983, Cooper's commander was notified that a urine sample provided by Cooper tested positive for marijuana. Administrative discharge proceedings were initiated against Cooper on March 4, 1983. Cooper's discharge notification listed his positive urinalysis as the sole basis for his recommended discharge. Cooper was discharged on April 6, 1983, with an Honorable discharge characterization.

In 1983, a formal panel of military and civilian experts in toxicology and drug testing was created by the U.S. Army to review the urinalysis testing procedures used by the Army/Air Force laboratories. Over 6000 chromatographies of urine specimens which tested positive for illicit drugs from April 1982 through November 1983 were reviewed. These specimens were tested at the Tripler, Wiesbaden, Fort Meade and Brooks testing laboratories. The Air Force sought to identify all persons whose positive test results did not meet newly established forensic criteria necessary for confirmation.

The Air Force identified 907 former servicemembers, including plaintiff Cooper, for whom it determined their urinalysis results should be set aside. For each of these 907 individuals, the Air Force then conducted an *ex parte* proceeding to determine whether their discharges may have been based on the test results from the urinalysis testing procedures. The Air Force then sent a letter to each of the 907 individuals stating that their urinalysis tests had been set aside. Two types of set aside letters were sent. Of these, 95 servicemembers received letters stating that the discharge may have been based solely on the urinalysis test which has now been set aside. The other letter sent to the remaining 812 servicemembers stated that other grounds supported discharge.

All of the 907 letters advised the Air Force veterans they could apply for relief with the Air Force Board for Correction of Military Records ("AFBCMR") to correct any error or injustice that may have occurred. The letters sent to the group of 812, however, further instructed these servicemembers that they could apply to the Air Force Discharge Review Board ("AFDRB") if they wanted to contest their reason for discharge or discharge characterization. A total of 217 of the servicemen requested relief as follows: 105 individuals applied for records correction with the AFDRB and 112 persons with the AFBCMR (32 of whom requested reinstatement).

With respect to plaintiff Cooper, he was informed in a letter dated July 31, 1985 that his urinalysis test result was set aside. Cooper's letter stated that although his urinalysis result had been set aside, there were other grounds sufficient to support his discharge. As with the other servicemembers, he was similarly advised that relief could be requested from either the AFDRB or AFBCMR.

Cooper applied for relief with the AFBCMR on September 25, 1985. He requested reinstatement, back pay and restoration of all his rights. The AFBCMR's decision on Cooper's claim was based upon an advisory opinion rendered by the Air Force Manpower and Personnel Center.[1] In a letter dated July 28, 1986, the AFBCMR denied Cooper reinstatement, but changed his reason for discharge from drug use to misconduct—minor disciplinary infractions. Further, the AFBCMR ordered that all references to drug abuse be removed from Cooper's military records.

Cooper filed this action on April 5, 1989. He filed an amended complaint on April 23, 1989. Cooper's First and Second Set of Interrogatories were filed on April 5, 1989 and April 10, 1990 respectively.

## II.

Defendants move pursuant to Fed.R. Civ.P. 26(c) to limit the scope of discovery. The precise issue confronting the Court is whether Cooper's discovery should be limited to information concerning those Air Force veterans who have exhausted their administrative remedies. Generally, par-

---

1. The advisory opinion stated that although Cooper's urinalysis had been set aside, his discharge was also based upon other derogatory information, namely: Letters of Counseling and Reprimand received by Cooper for reporting late for duty. However, this derogatory information was only listed on the recommendation for discharge sent from Cooper's commander to the separation authority and was not listed as a reason for discharge in Cooper's notification letter. Defendants assert that because Cooper was only notified of his drug use as a basis of discharge, they have admitted liability to Cooper and are prepared to reinstate him through the expiration of his enlistment contract, correct his military records and award him appropriate back pay.

ties are allowed to "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Fed.R.Civ.P. 26(b)(1). Rule 26(c)(4), however, permits an order "that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters" to protect a party from undue burden or expense. Fed. R.Civ.P. 26(c)(4). The type of order sought by defendants "might be appropriate when discovery would burden the party from whom it is sought unduly, in comparison with any advantage it would provide to the discovering party, either because a particular matter is of only minor importance or because it has already been thoroughly gone into and further inquiry would be repetitious." 8 C. Wright & A. Miller, *Federal Practice and Procedure* section 2040 (1970).

Defendants argue the only relevant discovery in this case is discovery related to those servicemembers, among the 907 servicemembers who received set aside notification, who have exhausted their administrative remedies. Defendants contend that since the exhaustion doctrine would apply to all of the potential class members Cooper seeks to represent, discovery should be limited to the group of servicemembers who satisfy the doctrine. Specifically, defendants seek entry of a protective order limiting discovery to those servicemembers who (1) tested positive for illegal drugs between April 1982 and November 1983; (2) received notification letters stating their urinalysis test result(s) had been set aside; (3) exhausted their administrative remedies before the AFDRB or AFBCMR, and (4) were discharged on or before April 5, 1983.[2] *See* Defendants' Reply to Plaintiff's Opposition to Defendants' Motion for a Protective Order at 4. To the extent that

Cooper's discovery requests fall outside of this category, defendants contend that such discovery should be prohibited because it is irrelevant and unduly burdensome.[3]

In opposition, plaintiff argues that his discovery requests are relevant to the class he seeks to represent. Plaintiff seeks to represent a class comprised of all members and former members of the Air Force (1) who were subjected to urinalysis drug tests from April 1982 through November 1983 which tested positive; (2) who were subsequently discharged before the expiration of their enlistment contract in a separation proceeding in which the Air Force relied upon evidence of drug abuse consisting of urinalysis test results which the Air Force later determined should be set aside, and (3) who were not provided complete relief from the premature discharge, including correction of military records and back pay and allowances. *See* Plaintiff's Opposition to Defendants' Motion for a Protective Order at 3–4. Thus, plaintiff contends that he should be allowed to obtain the requested discovery because it is relevant to the class he seeks to represent.

Cooper sets forth three arguments to rebut defendants' claim that the exhaustion requirement applies to limit the number of potential class members. First, Cooper asserts that Federal Circuit authority, which he contends is controlling law, does not require the former servicemembers to exhaust intraservice administrative remedies prior to filing suit. Second, Cooper argues that it is well-settled that exhaustion by a named individual plaintiff is sufficient to satisfy the exhaustion requirement for the remaining unnamed class members. Thus, Cooper contends that the prerequisite is satisfied in this case because he has exhausted his remedies before the AFBCMR.

---

2. Originally, defendants argued that discovery should be limited to former Air Force members who exhausted intraservice administrative remedies by requesting reinstatement before the AFBCMR, i.e. those who (1) tested positive for drugs during the period from April 1982 through November 1983, (2) who received a letter from the Air Force stating their urinalysis result had been set aside, and (3) who requested reinstatement from the AFBCMR. *See* Defen-

dants' Motion for a Protective Order at 5. This would involve a group of 32 servicemembers.

3. Defendants point to Interrogatories No. 1, 2, 3, 7, 9, 11, 13, 14, 15 and 16, in Plaintiff's Second Set of Interrogatories to Defendant, as examples of those discovery requests which defendants believe are irrelevant and unduly burdensome because they seek discovery for servicemembers who did not receive set aside notification.

Finally, in the alternative, Cooper argues that even if the exhaustion doctrine applies to both the individual plaintiffs and the class members they seek to represent, discovery should be allowed because it is necessary to determine whether recognized exceptions to the exhaustion doctrine apply. In this regard, Cooper suggests that it would be more appropriate for defendants to raise the exhaustion issue in the context of the forthcoming motion for class certification. Thus, Cooper argues that it would be premature to deny discovery at this stage of the proceedings.

The Court is persuaded that a protective order limiting discovery as proposed by defendants would be premature at this time. It would be more appropriate to consider many of the issues raised regarding the exhaustion doctrine when the matter of class certification is properly before the Court. For example, defendants seem to be arguing that the 217 servicemembers who exhausted their administrative remedies before the AFDRB or AFBCMR should be treated differently from those servicemembers who did not. For this reason, defendants appear to suggest that discovery regarding alleged class members who have exhausted their administrative remedies must be prohibited because they will be excluded from the class. At this time, the Court only has a general awareness of which Air Force veterans Cooper seeks to represent. Since the issue of class certification has not been fully briefed by the parties, the Court is hesitant to issue a ruling which would impact on that area. Although couched in the form of a motion for a protective order, resolution of the issues raised herein concerning exhaustion would necessarily involve a ruling determinative of class membership. Although the Court will defer ruling on the exhaustion issue, it is clear that discovery aimed at determining whether any exceptions to the exhaustion doctrine apply would be relevant to the subject matter of this case. For this reason, such discovery should be allowed.

Finally, the Court is not convinced that discovery regarding the group of 907 Air Force veterans who received notification of the set aside of their urinalysis results would be unduly burdensome to defendants. Cooper points out that defendants previously provided information about this group in response to Cooper's earlier discovery requests. With respect to the larger group of 6000+ servicemembers who were subjected to drug testing, the Court finds that Cooper is not entitled to discovery regarding this group. Discovery regarding individuals who did not receive set aside notification would be irrelevant and unduly burdensome to defendants. Accordingly, defendants' motion for a protective order is granted in part and denied in part.

In view of the above, it is hereby

ORDERED that defendants' motion for a protective order is granted in part and denied in part; and it is further

ORDERED that plaintiff may obtain discovery regarding the 907 Air Force veterans who (1) tested positive for illegal drugs between April 1982 and November 1983; and (2) received notification letters stating that their urinalysis test results had been set aside; and it is further

ORDERED that plaintiff's motion for class certification shall be filed 30 days from the date plaintiff receives the currently outstanding discovery from defendants; and it is further

ORDERED that defendants shall file their opposition to plaintiff's motion for class certification within 30 days of the filing of plaintiff's motion; and it is further

ORDERED that plaintiff shall file any response to defendants' opposition within 15 days of the filing of defendants' opposition; and it is further

ORDERED that the status hearing scheduled for August 6, 1990 is cancelled.