Marlin Wayne SMITH, Plaintiff,

v.

Jim DOWSON; Randy Fisher; Mike Diekmann; Bob Stein; Tom Burch; Todd Switajewski; Frank Homer; and John Doe, Defendants.

Civ. No. 5-94-28.

United States District Court,
D. Minnesota,
Fifth Division.

July 29, 1994.

---

Paul T. Benshoof, Bemidji, MN, for plaintiff.

Roger Rowlette, Minneapolis, MN, for defendants.

## ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter is before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Defendants' Oral Motion for a Protective Order which would preclude the Plaintiff from inquiring into specific matters during the depositions of the Defendants. A hearing was held on July 18, 1994, at which time the Plaintiff appeared by Paul T. Benshoof, Esq., and the Defendants appeared by Roger Rowlette, Esq.

For reasons which follow, the Motion for a Protective Order precluding certain discovery is granted.

### II. *Factual and Procedural Background*

On October 3, 1993, the Plaintiff, a Native American, was arrested by the Defendants, who are employed as officers of the Cass County Sheriff's Department. The Defendants suspected the Plaintiff of involvement in a September 30, 1993, robbery of the Palace Bingo & Casino, which is located in Cass County, Minnesota. However, shortly after his arrest, the Defendants realized their mistake, and the Plaintiff was released.

Thereafter, around November of 1993, five individuals were arrested and formally charged with the robbery of September 30, 1993. While four of these individuals await trial, the first of the five individuals was tried in February of 1994, and was acquitted on all charges. The defense in that case largely focused upon the reliability of the investigatory work done by the officers who are named as Defendants in this matter. As a consequence of the results in the first trial, a similar defense is anticipated from the remaining defendants.

The Plaintiff commenced this action on March 14, 1994, and alleges that his arrest and confinement by the Defendants was in violation of his constitutional rights under Title 42 U.S.C. § 1983. He also has alleged liability on supplemental claims of false imprisonment, assault and battery, and intentional infliction of emotional distress.

On June 27, 1994, this Court issued a Pretrial Order which scheduled discover to close on November 1, 1994, with the case being certified as "Ready for Trial" after January 1, 1995. Upon the commencement of discovery, the Plaintiff submitted Requests for the Production of Documents, to which the Defendants responded by providing material which related not only to the Plaintiff's arrest, but also to the investigation of the individuals who were subsequently arrested.

On July 7, 1994, however, during the deposition of the Defendant Mike Diekmann ("Diekmann"), who is the first of the Defendants to be deposed, counsel for the Defendants objected to the inquiry of Plaintiff's counsel as to matters which related to the subsequent criminal investigations into the same robbery. Counsel's objection precipitated a telephone conference with the Court that afternoon, during which the Defendants orally submitted the present Motion for a Protective Order in order to preclude the Plaintiff's inquiry into any subsequent investigations, by the Cass County Sheriff's Department, into the robbery of September 30.

During the course of the telephone conference, it soon became clear that the issues involved would require additional briefing and argument, and the matter was set for a formal Hearing, which now has been con-

ducted, and the issues are ripe for determination.

### III. *Discussion*

The Defendants request two alternative forms of relief from this Court. First, they seek an Order, pursuant to Rule 26(b) or (c), Federal Rules of Civil Procedure, which would prevent the Plaintiff from further inquiry into matters relating to the subsequent investigations that were performed by the Defendants. Second, the Defendants seek a stay of discovery until the resolution of the remaining criminal trials in Cass County. Since we find that an Order should issue precluding the proffered discovery, we need not address the issue of a stay.[1]

*Are the Defendants Entitled to an Order Limiting the Scope of the Plaintiff's Discovery?*

The Defendants contend that the Plaintiff's desired discovery is neither relevant nor is it designed to lead to the discovery of admissible evidence and that, therefore, an Order should issue pursuant to Rule 26(b)[2] or (c), which would preclude the Plaintiff from inquiring into the subsequent investigations that were performed by the Cass County Sheriff's Office. Given our conclusion that a Rule 26(c) Protective Order shall issue, we need not address whether discovery should be limited under Rule 26(b) as cumulative or unreasonably burdensome.

A. *Standard of Review.* Rule 26(c) provides in pertinent part:

[O]n matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which

justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

\*  \*  \*  \*  \*  \*

(4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters; \* \* \*.

A Protective Order which limits the scope of discovery, like all Rule 26(c) Protective Orders, can be obtained only for "good cause shown." *Rule 26(c)*.

■ Discovery of matters under Rule 26(b), which are "relevant to the subject matter," is broad enough to include not only matters which are admissible in evidence, but also those matters which appear "reasonably calculated to lead to the discovery of admissible evidence." *Rule 26(b)(1)*. Nonetheless, if discovery relates to matters, which are irrelevant under Rule 26(b), "courts have begun to [circumscribe discovery in advance pursuant to Rule 26(c)(4)] with more frequency \* \* \*." *Moore's Federal Practice*, ¶ 26.24; see also, *Navel Orange Administrative Committee v. Exeter Orange Co.*, 722 F.2d 449 (9th Cir.1983) (protective order limiting discovery of irrelevant material consistent with court's discretion under Rule 1). Thus, a showing of irrelevancy of proposed discovery can satisfy the "good cause" requirement of Rule 26(c). See, e.g., *United States v. Princeton Gamma–Tech, Inc.*, 817 F.Supp. 488, 493 (D.N.J.1993); *Cooper v. Secretary of Air Force*, 132 F.R.D. 119, 122 (D.D.C.1990).

\* \* \* shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

---

1. In their filings with the Court, the Defendants also requested an Order that would deny the proposed discovery on the ground that the subject matter is shielded from disclosure by the Minnesota Government Data Practices Act, *Minn.Stat. § 13.82*. However, at argument, all parties conceded that even if the deposition answers were to be considered protected data under the Act, this Court would not be without the requisite jurisdiction to require the production of the data. In view of our ruling here, the issues surrounding the Data Practices Act are moot.

2. Rule 26(b)(2), Fed.R.Civ.P., provides in part: The frequent or extent of use of the discovery methods otherwise permitted under these rules

■ B. *Legal Analysis.* We find that the Defendants have made a persuasive showing that the matters, as to which the Plaintiff seeks to inquire, are not relevant to the Plaintiff's cause of action.

The core claim in this matter, which is the sole basis for this Court's subject matter jurisdiction, is the Section 1983 action against the Defendants in their individual capacities. The Plaintiff alleges that his arrest was effectuated without requisite probable cause, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.[3]

■ A warrantless arrest, that is made without probable cause, can give rise to a Section 1983 claim against the erring officers, as such an arrest is an "unreasonable seizure" under the Fourth Amendment. See, *Kelly v. Bendes,* 23 F.3d 1328 (8th Cir.1994). Probable cause exists to make a warrantless arrest when, "at the moment the arrest was made," *Bridgewater v. Caples,* 23 F.3d 1447, 1449 (8th Cir.1994), quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964), the collective knowledge of the officers involved was "sufficient to warrant a prudent man in believing that [the arrestee] had committed or was committing an offense." *United States v. Wajda,* 810 F.2d 754, 758 (8th Cir.1987), quoting *Beck v. Ohio,* supra, 379 U.S. at 91, 85 S.Ct. at 225.

Given these legal precepts, the information gathered by arresting officers, or any actions they may have taken in subsequent investigations—after the release of the erroneously arrested individual—is wholly irrelevant to a claim that a particular arrest and detainer was without probable cause.[4] The probable cause issues turn entirely upon the "facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information at the time of arrest." *Clay v. Conlee,* 815 F.2d 1164, 1168 (8th Cir.1987) [emphasis supplied].

Nor would such information be relevant to defeating or rebutting the affirmative defense of qualified immunity.[5] The qualified immunity defense, to a claim that an arrest had been made without probable cause, rests upon whether, at the moment of arrest and seizure, a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information that the officers possessed. *Bridgewater v. Caples,* supra at 1449; see, *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Again, the actions of the officers, that occurred subse-

---

3. The Plaintiff advises that Count I of his Complaint is meant to include claims under Section 1983 that the Defendants made the arrest without probable cause, and for reasons of racial animus. Insofar as the Plaintiff's race is alleged to be an issue, we note that a claim that civil rights violations occurred by reason of racial animus is cognizable under Section 1983, as well as under Title 42 U.S.C. § 1981. See, *Hunt v. Jaglowski,* 665 F.Supp. 681 (N.D.Ill.1987); see also, *Foster v. Metropolitan Airports Commission,* 914 F.2d 1076, 1080–81 (8th Cir.1990) (dicta).

   In finding that the Defendants are entitled to a Protective Order under Rule 26(c)(4), we do not suggest that the Plaintiff is foreclosed from discovering the Defendants' alleged racial animus toward him. We find, however, that the proposed discovery does not appear reasonably likely to lead to admissible evidence of this sort. In this conclusion, we have drawn heavily from the fact that the Defendants have identified each of the individuals, who were subsequently arrested for committing the robbery, as also being of Native American ancestry—an assertion that the Plaintiff does not rebut. Accordingly, even as to the Plaintiff's discrimination claim, we fail to see how the manner in which the Defendants arrested other persons, each of whom shared the eth-

nic heritage of the Plaintiff, could disclose the Defendants' purported racial animus.

4. The Plaintiff maintains that this area of discovery is relevant in that "the jury is going to better understand the illegal nature of the plaintiff's arrest when they are able to contrast the procedures the defendants followed before plaintiff's illegal arrest with the procedures they followed after plaintiff's arrest." *Memorandum,* at 8. The argument misses the point. Even if the Defendants' investigatory techniques were of a vaudevillian quality, the issue for the Jury is not whether the Defendants could have utilized a more exacting investigatory technique, but whether the Defendants had probable cause to arrest the Plaintiff at the time that the arrest was made. The fact that subsequent arrests, whether for the same robbery or for any criminal offense generally, may have been conducted differently, does not alter the singular issue before the Jury.

5. While that defense is yet to be asserted in the form of a dispositive Motion, the Defendants indicate that a Summary Judgment Motion on that ground is forthcoming at the end of discovery.

quent to the Plaintiff's release, are irrelevant to the issue of whether a reasonable officer would have arrested the Plaintiff on the basis of the information that the Defendants possessed at the time of the arrest.[6]

We are mindful of the distinctions between relevance under Rule 401, Federal Rules of Evidence, and under Rule 26(b). For our purposes at this discovery stage, relevance can include any area of discovery which is reasonably calculated to lead the Plaintiff to evidence that is admissible in proving his claims or in rebutting an affirmative defense. However, the Plaintiff has made no showing that any matter of evidentiary value to his case will be obtained from his inquiry into the Defendants' subsequent investigations.[7] We would be amenable to allowing such discovery if it would bear on the information that the Defendants had gathered prior to the arrest of the Plaintiff, but the Plaintiff does not contend that the requested discovery would uncover such evidence or would lead to the disclosure of such evidence. Accordingly, we join in the view that, "[e]ven though the standard of relevancy for discovery purposes is a liberal one * * * the parties should not be permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might become so." *Blum v. Schlegel*, 150 F.R.D. 38, 39 (W.D.N.Y. 1993), quoting *Broadway & Ninety–Sixth St. Realty Co. v. Loew's Inc.*, 21 F.R.D. 347, 352 (S.D.N.Y.1958).

Finally, we do not find the Defendants' showing of good cause for a Protective Order to be undermined by their disclosure of documentary materials which relate to certain subsequent investigations. The Defendants have expressed a concern that the discovery, which the Plaintiff requests, will jeopardize the County's prosecution of other criminal offenses, an objection that, apparently, had not been previously asserted. Now the issue has been framed and submitted for our review, and we conclude that a Protective Order should be issued for the reasons we have addressed at some length.

NOW, THEREFORE, It is—

ORDERED:

1. That the Defendants' Oral Motion for a Protective Order is GRANTED.

2. That the Plaintiff shall be foreclosed, pursuant to Rule 26(c)(4), Federal Rules of Civil Procedure, from conducting further discovery that is related to the Defendants' criminal investigations which were conducted after the release of the Plaintiff, and which related to the robbery at the Palace Bingo & Casino on September 30, 1993.

3. That, in accordance with our decision, the Plaintiff's request for attorneys' fees in opposing the Oral Motion is denied.

---

**6.** Our result might well have been different if the Plaintiff's claims included a cause of action against Cass County, in accordance with the holding in *Monell v. Department of Social Services*, 436 U.S. 658, 691–94, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978), that alleged municipal policies which furthered or promoted the officers' conduct in question. However, no such claim has been pled.

**7.** Upon our inquiry at the Hearing in this matter, as to the relevance of any information which related to the investigations that occurred after the Plaintiff's release, Plaintiff's counsel reiterated his interest in being able to contrast and compare the Defendants' investigation of the Plaintiff with their investigation of those who were subsequently suspected of the same criminal offense. Of course, if such discovery were relevant and permissible, every arrest before or after that of the Plaintiff would be an open target for such an exhaustive inquiry. Notably, the Plaintiff does not offer any precedential authority for such a wide-ranging scope of discovery under the circumstances that control here.